# EXHIBIT A

## IN THE CHANCERY COURT FOR LOUDON COUNTY, TENNESSEE

| | | |
|---|---|---|
| BANC CARD GEORGIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. _____ |
| v. | ) | |
| | ) | |
| | ) | |
| UNITED COMMUNITY BANK, | ) | |
| | ) | |
| Defendant. | ) | |

### VERIFIED COMPLAINT

### I.     PARTIES

1.      Plaintiff Banc Card Georgia, LLC ("Banc Card") is a limited liability company organized under the laws of the State of Tennessee. Its principal place of business is 7135 Charlotte Pike, Suite 200, Nashville, Tennessee 37209.

2.      Defendant United Community Bank ("United Bank") is a corporation organized under the laws of the State of Georgia. Its principal place of business is 59 Highway 515, Blairsville, Georgia 30512. United Bank does business in Tennessee and its registered agent is Bradley J. Miller, 725 Highway 321 N, Lenoir City, TN 37771.

### II.     JURISDICTION AND VENUE

3.      Jurisdiction is proper in the courts of the State of Tennessee because both parties do business within this State and both parties have minimum contacts within this State.

4.      Venue is appropriate in Loudon County under Tenn. Code Ann. § 20-4-104(3)(A) as United Bank's registered agent for service of process is located in this county.

1

## III.    GENERAL ALLEGATIONS

5.    Banc Card engages in the business of providing credit and debit card processing and settlement services to retail merchants and other companies.

6.    United Bank is a financial institution which provides banking services at a number of locations in Tennessee, North Carolina, and Georgia.

7.    Prior to first contracting with Banc Card in 2003, United Bank provided credit and debit card processing and settlement services to retail merchants and other companies. In 2003, due to the costs related thereto, United Bank sold this line of its business and related goodwill to Banc Card in exchange for an ongoing percentage of revenue generated therefrom.

8.    The parties entered into what was titled a "Referral Agreement," dated January 23, 2003, attached hereto as **Exhibit A**, in which the parties agreed to certain terms related to the sale of this line of business / profit participation arrangement. The Referral Agreement provided that Banc Card would pay a quarterly fee of 10% of the revenue generated from merchants whose information United Bank provided to Banc Card and with whom Banc Card established a relationship.

9.    The parties entered into subsequent, identical "Referral Agreements" over the next few years. In each of these agreements until 2006, the percentage compensation was capped at 10%.

10.    In 2006, United Bank demanded a higher percentage and the parties reached an agreement that, in exchange for a non-compete/non-solicit restrictive covenant applicable to both parties, which would be added to the 2006 agreement, United Bank would receive 22.5% of revenue generated from the line of business that United Bank was selling to Banc Card.

2

11.    On June 1, 2011, the parties entered into the final "Referral Agreement," (the "2011 Agreement," attached hereto as **Exhibit B**), which contains identical language to that of the 2006 and 2008 agreements. United Bank, in fact, provided the draft of all of the agreements, including the 2011 Agreement.

12.    The 2011 Agreement provides, among other things:

2.    Bank Compensation for Referrals. During the term of this Agreement, and for as long as the merchants that have been accepted by Banc Card's processor to receive Processing Services as set forth in Section 3 below (collectively, the "Merchants") receive processing Services from Banc Card's processor, Banc Card shall pay to Bank quarterly a fee of 22.5% (twenty-two and ½ percent) of the Residual (as defined below) Banc Card receives as a result of the transaction volume of such Merchants. For purposes of this Agreement, "Residual" shall mean the remaining balance Banc Card receives as income after the provider of Processing Services retains its fee for providing such services to the Merchants. *The Quarterly fee shall survive termination of this agreement.*

...

4.    Confidentiality.  *Each party shall treat as confidential all information concerning the business of the other party or any Merchant that is learned during the course of performance hereunder. Such confidential information shall include,* without limitation, any trade secrets, agreements, policies and procedures, processes, programs, know how, financial information, pricing models or information, Merchant names, customer lists, *personnel information* and computer and other technical data. *Both parties agree that they cannot directly or indirectly compete on any merchant account that Banc Card is paying to Bank a fee. This paragraph shall survive termination of this Agreement....*

(*See* Exhibit B) (emphasis added).

13.    The 2011 Agreement expired on June 1, 2014.

14.    In April 2014, prior to the expiration of the 2011 Agreement, a representative of Blue Jack's Seafood, a retail merchant, walked into a United Bank branch office and inquired as to the availability of credit and debit card processing and settlement services. United Bank did not refer him to Banc Card but, instead, took this business opportunity for itself.

3

15.     On May 23, 2014, United Bank sent a letter to Banc Card informing it that United Bank would not renew the 2011 Agreement and that, upon termination, United Bank "elects to reject and no longer accept the Bank Compensation for Referrals or any other fee due Bank by Banc Card under the Agreement." (The May 23, 2014 Letter is attached hereto as **Exhibit C**.) The 2011 Agreement did not provide for "rejection" of this fee, which, instead, explicitly survives the termination of the 2011 Agreement.

16.     Banc Card responded to this letter on May 30, 2014 and reminded United Bank of the post-termination restrictive covenants, while noting that "Banc Card will honor its post-expiration obligations, including continued payment of appropriate referral fees per Section 2 [of the 2011 Agreement], and we expect that the Bank will likewise meet its post-expiration obligations, including those of non-disclosure and non-solicitation found in Section 4 of the [2011] Agreement." (The May 30, 2014 Letter is attached hereto as **Exhibit D**.)

17.     Banc Card paid a substantial amount of money for this line of business and goodwill, including over $1.5 million from 2008 to the present alone, and continues, as required under the 2011 Agreement, to pay for this line of business and goodwill.

18.     United Bank has flagrantly disregarded its obligations under the 2011 Agreement. Among other things, United Bank has disclosed Banc Card's confidential business information in its ongoing efforts to compete with Banc Card.

19.     United Bank has partnered with Security Card Services, LLC, which, on information and belief, has hired Express Employment Professionals, a recruiting service, to solicit a number of Banc Card employees and sales representatives. Upon information and belief, United Bank provided detailed Banc Card personnel information to Security Card Services, LLC.

4

20.     Express Employment Professionals has, in fact, directly contacted the following Banc Card employees by phone, email, or both: Mark Dougherty, Tyler Cook, Heather Shell, Tom Taratsas, Julia Chandler, Jack Paler, Matt Dougherty, Michael Bell, and Marc Potvin in an effort to convince these employees to leave Banc Card and work for United Bank and its affiliates and partners. These acts have created instability at Banc Card's offices.

21.     Three United Bank Vice Presidents, likewise, contacted a number of Banc Card employees and sales representatives and, not only offered these individuals a sales job in direct competition with Banc Card, but, when that offer was turned down, the United Bank officials offered these individuals a commercial lending position at United Bank. United Bank, thus, is not only competing with Banc Card for credit and debit card processing and settlement services by trying to steal away Banc Card's sales representatives, but United Bank is also doing anything in its power to cripple Banc Card's business by attempting to destroy Banc Card's sales force.

22.     In further express violation of the 2011 Agreement, United Bank has immediately solicited Banc Card's customers for whom Banc Card is still actively paying United Bank a fee. For example, United Bank contacted The Ridges Resort and Marina and instructed this merchant to hold off renewing any contract with Banc Card or signing any new contract with Banc Card until United Bank could provide them with rates and details for "United Community Payment Systems" – upon information and belief, a direct Banc Card competitor created and operated by United Bank. Banc Card has been contacted by The Ridges Resort and Marina, which has expressed confusion as to the status of its relationship with Banc Card. United Bank also contacted The Griddle Cafe & Deli in Blairsville, Georgia on June 13, 2014 and encouraged it to terminate its relationship with Banc Card and switch its credit and debit card processing and settlement services to United Bank. United Bank offered The Griddle Cafe & Deli a new credit

5

card terminal at no charge if it agreed to terminate its business relationship with Banc Card and switch to United Bank.

23. In short, United Bank has conspired with Security Card Services, LLC to violate the 2011 Agreement and interfere with Banc Card's business relationships with its merchant customers and use any means necessary to destroy Banc Card's business.

24. Banc Card has paid a substantial amount to United Bank for this line of business and the accompanying goodwill – including over $1.5 million since 2008 alone – and, thus, Banc Card has a legitimate business interest in maintaining this line of business and goodwill. Banc Card cannot quantify or accurately assess the harm caused by United Bank's flagrant violation of its non-solicit and nondisclosure agreement.

### CAUSES OF ACTION
### Count I
### Breach of Contract

24. Banc Card re-alleges and incorporates by reference the paragraphs above as though fully set forth.

25. On June 1, 2011, Banc Card entered into binding contract with United Bank for the sale of United Bank's card processing and settlement services business. That contract provides that United Bank "cannot directly or indirectly compete on any merchant account that Banc Card is paying to Bank a fee."

26. United Bank has breached the contract by competing with Banc Card for the services of existing merchants for whom Bank Card is currently paying a fee. United Bank's breach is substantial and material.

27. Banc Card will suffer irreparable harm as a result of this breach.

6

28. The contract further provides that "[e]ach party shall treat as confidential all information concerning the business of the other party...that is learned during the course of performance hereunder. Such confidential information shall include, without limitation...personnel information."

29. United Bank has breached the contract by releasing the names of Banc Card's employees to Security Card Services, LLC, which, upon information and belief, has hired a recruiting company which has directly contacted these employees and has attempted to convince them to leave Banc Card and join United Bank and its affiliates. United Bank's breach is substantial and material.

30. Banc Card will suffer irreparable harm as a result of this breach.

### Count II
### Common Law Tortious Interference with Business Relations

31. Banc Card re-alleges and incorporates by reference the paragraphs above as though fully set forth.

32. Banc Card has existing business relationships with merchants to whom it provides debit and credit card processing and settlement services.

33. United Bank referred these merchants to Banc Card and is aware of these business relationships.

34. Upon information and belief, United Bank has attempted to cause a termination of these business relationships by contacting the merchants and encouraging them not to renew their relationships with Banc Card.

35. United Bank's attempts to compete with Banc Card for the business of these merchants constitutes an improper means because it results in a breach of the contract between United Bank and Banc Card.

7

36. As a proximate result of United Bank's tortious conduct, Banc Card will be irreparably harmed.

37. Banc Card is likely to prevail on the merits of the causes of action set forth above, but pending resolution of this suit, Banc Card has no adequate remedy of law to protect itself from United Bank's improper activities. The open and hostile nature of United Bank's wrongful conduct and United Bank's continuing activities has caused or will cause irreparable harm to Banc Card which cannot be adequately, readily and completely compensated by money alone.

38. The public interest will not be disserved by the issuance of an injunction.

**THIS IS THE PLAINTIFF'S FIRST APPLICATION FOR EXTRAORDINARY RELIEF IN THIS ACTION, AND UNLESS THE DEFENDANT UNITED BANK IS ENJOINED, BANC CARD WILL SUFFER IRREPARABLE INJURY AND HARM BEFORE NOTICE CAN BE SERVED AND A HEARING HELD THEREON.**

WHEREFORE, Banc Card prays for the following relief:

1. That the Court grant a Temporary Restraining Order and Temporary Injunction;

2. Compensatory damages in an amount to be determined at trial;

3. Treble or punitive damages as permitted by law; and

4. That Banc Card be awarded such other and further relief, both general and special, at law or in equity, to which it may show itself to be justly entitled.

## <u>JURY DEMAND</u>

Plaintiff hereby demand a trial by jury of all issues so triable.

8

Respectfully submitted this _17th_ day of June, 2014.

John E. Winters (BPR No. 016345)
Kramer Rayson LLP
First Tennessee Plaza
800 South Gay Street, Suite 2500
Knoxville, Tennessee 37929
Tel. (865) 525-5134
Fax (865) 522-5723

-and-

John R. Jacobson (BPR#14365)
William M. Outhier (BPR#15609)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737

*Attorneys for Plaintiff Banc Card Georgia, LLC*

9

## VERIFICATION

I, Charles H. Geny, being duly sworn, state that I am the President of Banc Card Georgia, LLC, plaintiff in the foregoing Verified Complaint. I have read the Verified Complaint and there is no single employee, representative or person otherwise affiliated with the Plaintiff with first-hand, personal knowledge of all the facts and information contained in the Verified Complaint. The factual allegations in the Verified Complaint are based on my personal knowledge, including facts I learned from other Banc Card employees with first-hand, personal knowledge, and those facts are true to the best of my knowledge, information and belief.

Charles H. Geny

County of Davidson          )
State of Tennessee          )


On this the 17th day of June 2014, personally appeared before me the above named Charles H. Geny known to me personally or made known to me by satisfactory proof, who was duly sworn and on oath executed the above verification.

Notary Public

My Commission Expires: 5/8/17

## COST BOND

    We acknowledge ourselves surety for all costs, taxes and damages that may be awarded against the Plaintiff in this case in accordance with Tennessee Code Annotated Section 20-12-120.

                    KRAMER RAYSON LLP

                    _John E. Winters_ (signature)
                    John E. Winters

10

63 Highway 515
P.O. Box 398
Blairsville, GA 30514

Phone: 866-270-7200
Fax: 706-745-9046

Visit our website at www.ucbi.com.



# Fax

| **To:** | Henry Geny @ BancCard | **From:** | Jim Campbell |
|---|---|---|---|
| **Fax:** | 615-352-6946 | **Pages:** | 5, including cover |
| **Phone:** | | **Date:** | 3/12/2003 |
| **Re:** | Referral Agreement between UCBI & BancCard | **CC:** | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● **Comments:**

We will send you the original to you via overnight mail.

*This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via U.S. Postal Service. Thank you.*

**EXHIBIT**

**A**

# REFERRAL AGREEMENT

This Referral Agreement ('Agreement"), made and entered into as of this 23rd day of January, 2003, by and between UNITED COMMUNITY BANKS, INC., A State Chartered ("Bank"), and Banc Card of Georgia, Inc., a Georgia corporation ("Banc Card"),

WHEREAS, Bank and Banc Card desire to enter into this Agreement for purposes of setting forth the terms and conditions under which Bank shall from time to time supply Banc Card, either orally or in writing, with a list of Bank's customers to which Banc Card may solicit to arrange for the provision of credit, debit and ATM card processing and settlement services ("Processing Services"), and specifying the rights and responsibilities of each party hereto and the compensation and payments to be made or received by the parties with regard thereto;

NOW, THEREFORE, in consideration of the premises and the mutual representations and warranties and covenants which are made and to be performed by the respective parties, it is hereby agreed as follows:

1.    Purpose.  The purpose of this Agreement is to set forth the obligations and rights of Bank and Banc Card with respect to the referral by Bank to Banc Card from time to time, either orally or in writing, of a list of customers who may hereafter enter into agreements to receive Processing Services from an authorized Banc Card processor as a result of the direct solicitation efforts of Banc Card.

2.    Bank Compensation for Referrals.  During the term of this Agreement, and for as long as the merchants that have been accepted by Banc Card's processor to receive Processing Services as set forth in Section 3 below (collectively, the "Merchants") receive Processing Services from Banc Card's processor, Banc Card shall pay to Bank quarterly a fee of 10% (ten percent) of the Residual (as defined below) Banc Card receives as a result of the transaction volume of such Merchants.  For purposes of this Agreement, "Residual" shall mean the remaining balance Banc Card receives as income after the provider of Processing Services retains its fees for providing such services to the Merchants.

3.    Services and Obligations of Banc Card to Merchants.  Upon receipt of a merchant referral from Bank, Banc Card shall use best efforts to contact the merchant within 24 hours.  Banc Card shall undertake a review of the merchant's need for Processing Services and recommend the appropriate system and equipment.  In order to qualify as a Merchant for purposes of this Agreement, a merchant must be accepted by Banc Card's processor to receive Processing Services, including but not limited to, receiving the required credit approval, and such merchant shall have executed and delivered a merchant agreement relating to the provision of Processing Services.

1

Promptly upon meeting such requirements, Banc Card shall install with Merchant such equipment necessary for the Merchant to receive Processing Services from an authorized Banc Card provider.

    4.    <u>Confidentiality</u>. Each party shall treat as confidential all information concerning the business of the other party or any Merchant that is learned during the course of performance hereunder. Such confidential information shall include, without limitation, any trade secrets, agreements, policies and procedures, processes, programs, know how, financial information, pricing models or information, Merchant names, customer lists, Merchant lists, personnel information and computer and other technical data. Notwithstanding anything provided in this Agreement to the contrary, the parties' obligation of confidentiality hereunder shall survive termination of this Agreement. Both parties agree to execute United Community Banks privacy policy as attached and labeled Exhibit "A".

    5.    <u>Term and Termination</u>. This Agreement shall become effective as of the date hereof and, except for any provisions with longer survival periods as indicated herein which provisions shall control, shall remain in full force and effect through January 31, 2004. This Agreement can be terminated by either party for any reason upon 90 days prior written notice.

    6.    <u>No Liability for Merchant Fraud</u>. In no event shall Bank be liable for any action or omission by Merchants, including without limitation, any Merchant fraud.

    8.    <u>Miscellaneous</u>. This Agreement is made and shall be construed under the laws of the State of Georgia without regard to any conflicts of law provisions thereof. Any notice required or permitted to be given by either of the parties hereto shall be in writing and delivered via certified mail, overnight mail or facsimile to such party's principal place of business. Bank's rights and obligations arising under this Agreement shall not be assigned by Bank without the express written consent of Banc Card. This Agreement and rights and obligations hereunder shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be modified or amended in any fashion except by an instrument writing signed by both parties. This Agreement may be executed in any number of counterparts, all of which shall constitute a single instrument. All section titles and captions set forth in this Agreement are for convenience only and shall not be deemed a part of this Agreement. In the event any portion of the Agreement shall be determined by any court of competent jurisdiction to be unenforceable, the balance of the Agreement shall be severed therefrom and shall continue in full force and effect, unless a failure of consideration would thereby result. The parties hereto shall be construed to create a joint venture, partnership or other legal relationship between the parties wherein either party may share or be responsible for the debts or liabilities of other party.

2

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and
year first above written.

UNITED COMMUNITY BANKS, INC.

By: _____
Name: _JAmes G. / CAmpbell_
Title: _EVP_

BANC CARD OF GEORGIA, INC.

By: _____
Name: _Charles H. Geny Sec-Tres._

3

# UNITED COMMUNITY BANKS, INC.

## THIRD PARTY VENDOR/CONTRACTOR AGREEMENT
### (In compliance with the Gramm-Leach-Bliley Financial Modernization Act and Regulation P)

United Community Banks, Inc. (Client) and Vendor noted below each acknowledge and agree that this agreement constitute an agreement for Vendor to perform services for Client as contemplated in Title V of the Gramm-Leach-Bliley Financial Modernization Act (the "Act") and Regulation P issued under the Act ("Regulation P"). Without limiting the generality of the terms of the Vendor Contracts, Vendor agrees that it shall protect the privacy of Client's and Client's subsidiaries' customers non-public personal information, as such terms are defined in the Act and in Regulation P ("Consumer Information") to at least the same extent that Client must maintain that confidentiality under the Act and Regulation P. Without limiting the generality of the foregoing sentence, Vendor shall not disclose any non-public personal information to any third person except as required in the performance of services under the Vendor Contract, and Vendor shall not use any non-public personal information except to perform the services described under the Vendor Contract. Vendor shall establish administrative, technical and physical safeguards for Client's and Client's subsidiaries' customer records and information in Vendor's control or possession from time to time. Such safeguards shall be designed for the purpose of: (1) insuring the security of such records and information; (2) protecting against any anticipated threats or hazards to the security or integrity of such records and information; and (3) protecting against unauthorized access to or use of such records and information that would result in substantial harm or inconvenience to any Client and Client subsidiary customer. Such safeguards shall be established in accordance with Section 501 of the Act and the Interagency guidelines Establishing Standards for Safeguarding Customer Information adopted pursuant to Section 501 of the Act.

VENDOR _Banc Card of Georgia, Inc._    UNITED COMMUNITY BANKS, INC.

BY: _____    BY: _____

NAME: _Charles H. Gray_    NAME: _Thomas C. Gilliland_

TITLE: _Sec. Tres._    TITLE: _S.U.P_

DATE: _5/6/03_    DATE: _3/10/03_

## UNITED COMMUNITY BANKS, INC.

### THIRD PARTY VENDOR/CONTRACTOR AGREEMENT
(In compliance with the Gramm-Leach-Bliley Financial Modernization Act and Regulation P)

United Community Banks, Inc. (Client) and Vendor noted below each acknowledge and agree that this agreement constitute an agreement for Vendor to perform services for Client as contemplated in Title V of the Gramm-Leach-Bliley Financial Modernization Act (the "Act") and Regulation P issued under the Act ("Regulation P"). Without limiting the generality of the terms of the Vendor Contracts, Vendor agrees that it shall protect the privacy of Client's and Client's subsidiaries' customers non-public personal information, as such terms are defined in the Act and in Regulation P ("Consumer Information") to at least the same extent that Client must maintain that confidentiality under the Act and Regulation P. Without limiting the generality of the foregoing sentence, Vendor shall not disclose any non-public personal information to any third person except as required in the performance of services under the Vendor Contract, and Vendor shall not use any non-public personal information except to perform the services described under the Vendor Contract. Vendor shall establish administrative, technical and physical safeguards for Client's and Client's subsidiaries' customer records and information in Vendor's control or possession from time to time. Such safeguards shall be designed for the purpose of: (1) insuring the security of such records and information; (2) protecting against any anticipated threats or hazards to the security or integrity of such records and information; and (3) protecting against unauthorized access to or use of such records and information that would result in substantial harm or inconvenience to any Client and Client subsidiary customer. Such safeguards shall be established in accordance with Section 501 of the Act and the Interagency guidelines Establishing Standards for Safeguarding Customer Information adopted pursuant to Section 501 of the Act.

VENDOR *Banc Card of Georgia Inc.*

BY: _____

NAME: *Charles H. Gray*

TITLE: *Sec,- Tres.*

DATE: *5/6/03*

UNITED COMMUNITY BANKS, INC.

BY: _____

NAME: *Thomas C. Gilliland*

TITLE: *E.V.P*

DATE: *3/10/03*

## REFERRAL AGREEMENT

This Referral Agreement ('Agreement"), made and entered into as of this ___1st___ day of June, 2011, by and between UNITED COMMUNITY BANK, A State Chartered ("Bank"), and Banc Card of Georgia LLC., a Tennessee limited liability company ("Banc Card").

WHEREAS, Bank and Banc Card desire to enter into this Agreement for purposes of setting forth the terms and conditions under which Bank shall from time to time supply Banc Card, either orally or in writing, with a list of Bank's customers to which Banc Card may solicit to arrange for the provision of credit, debit and ATM card processing and settlement services ("Processing Services"), and specifying the rights and responsibilities of each party hereto and the compensation and payments to be made or received by the parties with regard thereto;

NOW, THEREFORE, in consideration of the premises and the mutual representations and warranties and covenants which are made and to be performed by the respective parties, it is hereby agreed as follows:

1. <u>Purpose.</u> The purpose of this Agreement is to set forth the obligations and rights of Bank and Banc Card with respect to the referral by Bank to Banc Card from time to time, either orally or in writing, of a list of customers who may hereafter enter into agreements to receive Processing Services from an authorized Banc Card processor as a result of the direct solicitation efforts of Banc Card.

2. <u>Bank Compensation for Referrals.</u> During the term of this Agreement, and for as long as the merchants that have been accepted by Banc Card's processor to receive Processing Services as set forth in Section 3 below (collectively, the "Merchants") receive Processing Services from Banc Card's processor, Banc Card shall pay to Bank quarterly a fee of 22.5% (twenty-two and ½ percent) of the Residual (as defined below). For purposes of this Agreement, "Residual" shall mean the remaining balance Banc Card receives as income after the provider of Processing Services retains its fees for providing such services to the Merchants. The Quarterly fee shall survive termination of this agreement.

3. <u>Services and Obligations of Banc Card to Merchants.</u> Upon receipt of a merchant referral from Bank, Banc Card shall use best efforts to contact the merchant within 24 hours. Banc Card shall undertake a review of the merchant's need for Processing Services and recommend the appropriate system and equipment. In order to qualify as a Merchant for purposes of this Agreement, a merchant must be accepted by Banc Card's processor to receive Processing Services, including but not limited to, receiving the required credit approval, and such merchant shall have executed and delivered a merchant agreement relating to the provision of Processing Services.



Promptly upon meeting such requirements, Banc Card shall install with Merchant such equipment necessary for the Merchant to receive Processing Services from an authorized Banc Card provider.

    4.    <u>Confidentiality</u>. Each party shall treat as confidential all information concerning the business of the other party or any Merchant that is learned during the course of performance hereunder. Such confidential information shall include, without limitation, any trade secrets, agreements, policies and procedures, processes, programs, know how, financial information, pricing models or information, Merchant names, customer lists, Merchant lists, personnel information and computer and other technical data. Both parties agree that they can not directly or indirectly compete on any merchant account that Banc Card is paying to Bank a fee. This paragraph shall survive termination of this Agreement. Both parties agree to execute United Community Banks 3rd party Vendor/Contract Agreement as attached and labeled Exhibit "A".

    5.    <u>Term and Termination</u>. This Agreement shall become effective as of the date hereof and, except for any provisions with longer survival periods as indicated herein which provisions shall control, shall remain in full force and effect through June 1, 2014.

    6.    <u>No Liability for Merchant Fraud</u>. In no event shall Bank be liable for any action or omission by Merchants, including without limitation, any Merchant fraud.

    8.    <u>Miscellaneous</u>. This Agreement is made and shall be construed under the laws of the State of Georgia without regard to any conflicts of law provisions thereof. Any notice required or permitted to be given by either of the parties hereto shall be in writing and delivered via certified mail, overnight mail or facsimile to such party's principal place of business. Bank's rights and obligations arising under this Agreement shall not be assigned by Bank without the express written consent of Banc Card. This Agreement and rights and obligations hereunder shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be modified or amended in any fashion except by an instrument writing signed by both parties. This Agreement may be executed in any number of counterparts, all of which shall constitute a single instrument. All section titles and captions set forth in this Agreement are for convenience only and shall not be deemed a part of this Agreement. In the event any portion of the Agreement shall be determined by any court of competent jurisdiction to be unenforceable, the balance of the Agreement shall be severed therefrom and shall continue in full force and effect, unless a failure of consideration would thereby result. The parties hereto shall be construed to create a joint venture, partnership or other legal relationship between the parties wherein either party may share or be responsible for the debts or liabilities of other party.

Case 3:14-cv-00300-TAV-HBG   Document 1-2   Filed 06/30/14   Page 20 of 53   PageID #: 27

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

UNITED COMMUNITY BANK

By: _____
Name: _____Bill M. Gilbert_____
Title: _____SVP Retail Banking_____

BANC CARD OF GEORGIA, LLC

By: _____
Name: _____Charles H. Geny_____
Title: _____Chairman_____

Exhibit A

UNITED COMMUNITY BANK

THIRD PARTY VENDOR/CONTRACTOR AGREEMENT
(In compliance with the Gramm-Leach-Bliley Financial Modernization Act and Regulation P)

United Community Banks, Inc. (Client) and Vendor noted below each acknowledge and agree that this agreement constitute an agreement for Vendor to perform services for Client as contemplated in Title V of the Gramm-Leach-Bliley Financial Modernization Act (the "Act") and Regulation P issued under the Act (Regulation P"). Without limiting the generality of the terms of the Vendor contracts, Vendor agrees that it shall protect the privacy of Client's and Client's subsidiaries' customers non-public personal information, as such terms are defined in the Act and in Regulation P ("Consumer Information") to at least the same extent that Client must maintain that confidentiality under the Act and Regulation P. Without limiting the generality of the foregoing sentence, Vendor shall not disclose any non-public personal information to any third person except as required in the performance of services under the Vendor Contract, and Vendor shall not use any non-public personal information except to perform the services described under the Vendor Contract. Vendor shall establish administrative, technical and physical safeguards for Client's and Client's subsidiaries' customer records and information in Vendor's control or possession from time to time. Such safeguards shall be designed for the purpose of: (1) insuring the security of such records and information (2) protecting against any anticipated threats or hazards to the security or integrity of such records and information; and (3) protecting against unauthorized access to or use of such records and information that would result in substantial harm or inconvenience to any Client and Client subsidiary customer. Such safeguards shall be established in accordance with Section 501 of the Act and the Interagency guidelines Establishing Standards for Safeguarding Customer Information adopted pursuant to Section 501 of the Act.

VENDOR: Banc Card Georgia LLC

BY: _____

NAME: ____ Charles H. Geny ____

TITLE: ____ Chairman ____

DATE: ____ June 1, 2011 ____

United Community Bank

BY: _____

NAME: ____ Bill M Gilbert ____

TITLE: ____ SVP Retail Banking ____

DATE: ____ June 1, 2011 ____



**United Community Banks**

May 23, 2014

Sent Via Federal Express Overnight Delivery

Banc Card of Georgia LLC
ATTN: Mr. Henry Geny, President
7135 Charlotte Pike, Ste. 200
Nashville, TN 37209

Dear Henry:

I am writing in reference to that certain Referral Agreement entered into on June 1, 2011 by and between United Community Bank ("United") and Banc Card of Georgia LLC ("Banc Card"), hereafter referred to as the "Agreement". Capitalized terms not defined herein shall have the same meaning as in the Agreement.

As you are aware, the Agreement expires on June 1, 2014. Accordingly, effective upon expiration, United elects to reject and no longer accept the Bank Compensation for Referrals or any other fee due Bank by Banc Card under the Agreement.

I would like to thank you on behalf of United for Banc Card's partnership over the years. We wish Banc Card much future success.

Should you have any questions about this, please feel free to call me.

Sincerely,

Bill M. Gilbert
Director of Banking



EXHIBIT

P.O. Box 398
Blairsville, GA 30514
866.270.7200 • 706.781.2265



THE TRANSACTION COMPANY

May 30, 2014

Mr. Bill M. Gilbert                    ***VIA EMAIL AND OVERNIGHT DELIVERY***
Director of Banking
United Community Banks
P.O. Box 398
Blairsville, Georgia 30514

     RE:    Referral Agreement, dated June 1, 2011, between United Community Bank and
           Banc Card Georgia LLC

Dear Bill:

     This letter is in response to your letter, dated May 23, 2014, concerning the expiration of
the Referral Agreement between Banc Card Georgia and United Community Banks. As you
know, the Referral Agreement contains certain obligations that survive the expiration of the
Agreement, including, among others, those found in Sections 2 and 4 of the Agreement. In
accordance with the express terms of our Agreement, Banc Card will honor its post-expiration
obligations, including continued payment of appropriate referral fees per Section 2, and we
expect that the Bank will likewise meet its post-expiration obligations, including those of non-
disclosure and non-solicitation found in Section 4 of the Agreement.

     To be clear we expect that you will comply with the post expiration terms and conditions
of the Referral Agreement, as we intend to do. Please do not hesitate to give me a call 615/352-
6956 should you have any questions or wish to discuss further.

                Very truly yours,

                Charles H. Geny,
                Chairman



EXHIBIT
D
ALL-STATE LEGAL®

Error! Unknown document property name.

# IN THE CHANCERY COURT FOR LOUDON COUNTY, TENNESSEE

| | | |
|---|---|---|
| BANC CARD GEORGIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. _____ |
| v. | ) | |
| | ) | |
| | ) | |
| UNITED COMMUNITY BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

The Plaintiff, Banc Card Georgia, LLC ("Banc Card"), hereby applies, pursuant to Rule 65.03 of the Tennessee Rules of Civil Procedure, for the issue of a Restraining Order enjoining Defendant United Community Bank ("United Bank"), its officers, agents, and all persons in active concert or participation with it from (a) initiating further contact with any of those customers acquired by Banc Card pursuant to the agreements between the parties; (b) disclosing Banc Card's confidential business information, including, among other things, Banc Card's personnel information to third parties; and (c) directly soliciting Banc Card's employees and/or sales representatives. As grounds for this application, Banc Card states as follows:

1. In the absence of the relief sought herein, immediate irreparable harm to Banc Card will occur.

2. There is no likelihood of harm to United Bank and others if the order sought herein is granted.

3. There is a substantial probability of success on the merits of Banc Card's action.

4. The issuance of the order sought herein would serve the public interest.

5. Banc Card stands ready to give security in such amount as this Court deems proper for the payment of such costs and damages as may be incurred by United Bank if it is found to have been wrongfully enjoined.

1

6.     The grounds for this application are more fully described in the memorandum of law in support of this application submitted contemporaneously herewith and the Verified Complaint filed in this action.

7.     A proposed Restraining Order has been submitted contemporaneously herewith.

THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF.

Respectfully submitted this _17th_ day of June, 2014.

*John E. Winters*

John E. Winters (BPR No. 016345)
Kramer Rayson LLP
First Tennessee Plaza
800 South Gay Street, Suite 2500
Knoxville, Tennessee 37929
Tel. (865) 525-5134
Fax (865) 522-5723

-and-

*William M. Outhier by Jhul w/ pm*

John R. Jacobson (BPR#14365)
William M. Outhier (BPR#15609)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737

*Attorneys for Plaintiff Banc Card Georgia, LLC*

2

## CERTIFICATE OF SERVICE

I hereby certify that on the _17th_ day of June, 2014 a true and exact copy of the foregoing has been served via U.S. mail on the following:

> Bradley J. Miller
> 725 Highway 321 N
> Lenoir City, TN 37771
> *Registered Agent for Defendant*

_John E. Winters_

John E. Winters

## IN THE CHANCERY COURT FOR LOUDON COUNTY, TENNESSEE

| | | |
|---|---|---|
| **BANC CARD GEORGIA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.** _____ |
| **v.** | ) | |
| | ) | |
| | ) | |
| **UNITED COMMUNITY BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER

### I. INTRODUCTION

Plaintiff Banc Card Georgia, LLC ("Banc Card") is entitled to a Temporary Restraining Order, restraining and enjoining Defendant United Community Bank ("United Bank") from cavalierly continuing to breach the referral agreement into which United Bank and Banc Card entered. Among other ways, United Bank breached their agreement by sharing Banc Card's confidential business information with a competitor, soliciting Banc Card's customers and, otherwise, directly and indirectly competing with Banc Card.

Banc Card engages in the business of providing credit and debit card processing and settlement services to retail merchants and other companies. United Bank is a financial institution which provides banking services at a number of locations in Tennessee, North Carolina, and Georgia. Prior to first contracting with Banc Card in 2003, United Bank provided its own credit and debit card processing and settlement services to retail merchant customers. In or around 2003, however, due to United Bank's costs associated with the services, United Bank sold this line of its business to Banc Card and/or entered into this profit participation

1

arrangement with Banc Card. In exchange for United Bank's agreeing to sell the right to service these customers, Banc Card agreed to provide a percentage of revenue Banc Card generated through those customers.

From 2003 until the final agreement between the parties expired as of June 1, 2014, the parties entered into several referral agreements defining their respective rights and obligations. Those agreements detailed the terms of United Bank's sale of a portion of its card processing and settlement services business / the parties' profit participation arrangement. In 2006, 2008, and again in 2011, the referral agreement executed by the parties included certain restrictive covenants that obligated *both parties* during the term and after the agreement was terminated.

One such covenant states that each party shall treat as confidential "all information concerning the business of the other party." United Bank has already violated this provision by, among other things, releasing information related to Banc Card's sales employees to Security Card Services, LLC, which, upon information and belief, has passed this information along to a third-party recruiter, Express Employment Professionals, so that Express Employment Professionals can directly solicit Banc Card's sales employees as part of United Bank's efforts to compete with Banc Card for the restricted accounts. United Bank's continued violation of this provision irreparably harms Banc Card.

The Agreement further provides that "[b]oth parties agree that they can not directly or indirectly compete on any merchant account that Banc Card is paying to Bank a fee." The Agreement provides that the continuing fee Banc Card is to pay United Bank for purchase of this line of business "shall survive termination of this agreement." As such, Banc Card is still actively paying a compensation fee to United Bank. United Bank, however, has willfully violated

2

this provision and has actively solicited Banc Card's customers in an effort to convince them to terminate their business relationship with Banc Card and switch to what United Bank calls "United Community Payment Systems" – a competing company, which, on information and belief, is operated by United Bank.

As the Verified Complaint establishes, United Bank has breached the Agreement and unlawfully interfered with Banc Card's business relations and United Bank, along with those with whom it has conspired, including Security Card Services, LLC, are reaping the rewards of United Bank's unlawful conduct.

For those reasons, Banc Card is entitled to a Temporary Restraining Order. Banc Card seeks to enjoin United Bank from soliciting any of Banc Card's customers or otherwise competing with Banc Card and from releasing any of Banc Card's confidential business information.

## II.　STATEMENT OF FACTS

Prior to contracting with Banc Card, United Bank previously handled its credit and debit card processing and settlement services to its merchant customers in-house. (*See* Verified Complaint at ¶ 7). In or around 2003, however, United Bank sold this line-of-business to Banc Card in exchange for a percentage of revenue generated from this business. That percentage was capped at 10% from 2003 until 2006. (*Id.* at ¶¶ 7-8). In 2006, however, United Bank demanded a higher percentage and the parties reached an agreement that, in exchange for, among other things, the restrictive covenants at issue in this case, United Bank would receive 22.5% of revenue generated from the line of business that United Bank had sold to Banc Card and, in

3

particular, the revenue generated from Banc Card's merchant customers secured from customer lists that United Bank had provided to Banc Card as part of the sale. (*Id.* at ¶ 10).

On June 1, 2011, the parties entered into the final "Referral Agreement" (the "2011 Agreement"), which contains identical language to that of the 2006 and 2008 agreements. (*Id.* at ¶ 11, at Ex. B).

The 2011 Agreement provides, among other things:

> 2.  Bank Compensation for Referrals. During the term of this Agreement, and for as long as the merchants that have been accepted by Banc Card's processor to receive Processing Services as set forth in Section 3 below (collectively, the "Merchants") receive processing Services from Banc Card's processor, Banc Card shall pay to Bank quarterly a fee of 22.5% (twenty-two and ½ percent) of the Residual (as defined below) Banc Card receives as a result of the transaction volume of such Merchants. For purposes of this Agreement, "Residual" shall mean the remaining balance Banc Card receives as income after the provider of Processing Services retains its fee for providing such services to the Merchants. *The Quarterly fee shall survive termination of this agreement.*

> ...

> 4.  Confidentiality. *Each party shall treat as confidential all information concerning the business of the other party or any Merchant that is learned during the course of performance hereunder. Such confidential information shall include*, without limitation, any trade secrets, agreements, policies and procedures, processes, programs, know how, financial information, pricing models or information, Merchant names, customer lists, *personnel information* and computer and other technical data. *Both parties agree that they cannot directly or indirectly compete on any merchant account that Banc Card is paying to Bank a fee. This paragraph shall survive termination of this Agreement....*

(*Id.* at ¶ 11, at Ex. B) (emphasis added).

The 2011 Agreement expired on June 1, 2014. (*Id.* at ¶ 13). In April 2014, prior to the expiration of the 2011 Agreement, a representative of Blue Jack's Seafood, a retail merchant, walked into a United Bank branch office and inquired as to the availability of credit and debit

4

card processing and settlement services. United Bank did not refer him to Banc Card but, instead, took this business opportunity for itself. (*Id.* at ¶ 14).

On May 23, 2014, United Bank sent a letter to Banc Card informing it that United Bank would not renew the 2011 Agreement and that, upon termination, United Bank "elects to reject and no longer accept the Bank Compensation for Referrals or any other fee due Bank by Banc Card under the Agreement." (*Id.* at ¶ 15, at Ex. C). The 2011 Agreement did not provide for "rejection" of this fee, which, instead, explicitly survives the termination of the 2011 Agreement. (*Id.* at ¶ 15, at Ex. B).

Banc Card responded to this letter on May 30, 2014 and reminded United Bank of the post-termination restrictive covenants, while noting that "Banc Card will honor its post-expiration obligations, including continued payment of appropriate referral fees per Section 2 [of the 2011 Agreement], and we expect that the Bank will likewise meet its post-expiration obligations, including those of non-disclosure and non-solicitation found in Section 4 of the [2011] Agreement." (*Id.* at ¶ 16, at Ex. D). Banc Card paid a substantial amount of money for this line of business and goodwill, including over $1.5 million from 2008 to the present, and continues, as required under the 2011 Agreement, to pay for this line of business and goodwill. (*Id.* at ¶ 17).

United Bank has flagrantly disregarded its obligations under the 2011 Agreement. Among other things, United Bank immediately released Banc Card's confidential information in its ongoing efforts to compete with Banc Card. (*Id.* at ¶ 18). United Bank has partnered with Security Card Services, LLC, who, upon information and belief, has hired Express Employment Professionals, a recruiting service, to solicit a number of Banc Card employees and sales

representatives. Upon information and belief, United Bank provided detailed personnel information to Security Card Services, LLC. (*Id.* at ¶ 19).

Express Employment Professionals has, in fact, directly contacted the following Banc Card employees by phone, email, or both: Mark Dougherty, Tyler Cook, Heather Shell, Tom Taratsas, Julia Chandler, Jack Paler, Matt Dougherty, Michael Bell, and Marc Potvin in an effort to convince these employees to leave Banc Card and work for United Bank. (*Id.* at ¶ 20).

Three United Bank Vice Presidents, likewise, contacted a number of Banc Card employees and sales representatives and, not only offered these individuals a sales job, but, when that offer was turned down, the United Bank officials offered these individuals a commercial lending position. United Bank, thus, is not only competing with Banc Card for credit and debit card processing and settlement services by trying to steal away Banc Card's sales representatives, but United Bank is also doing anything in its power to destroy Banc Card's business by raiding Banc Card's sales force by any means necessary. (*Id.* at ¶ 21).

In further express violation of the 2011 Agreement, United Bank has immediately solicited Banc Card's customers for whom Banc Card is still actively paying United Bank a fee. For example, United Bank contacted The Ridges Resort and Marina and instructed this merchant to hold off renewing any contract with Banc Card or signing any new contract with Banc Card until United Bank could provide them with rates and details for "United Community Payment Systems" – upon information and belief, a direct Banc Card competitor created and operated by Banc Card. (*Id.* at ¶ 22). United Bank also contacted The Griddle Cafe & Deli in Blairsville, Georgia on June 13, 2014 and encouraged it to terminate its relationship with Banc Card and switch its credit and debit card processing and settlement services to United Bank. United Bank

6

offered The Griddle Cafe & Deli a new credit card terminal at no charge if it agreed to terminate its business relationship with Banc Card and switch to United Bank. (*Id.*). In short, United Bank has conspired with Security Card Services, LLC to violate the 2011 Agreement and interfere with Banc Card's business relationships with its merchant customers and use any means necessary to destroy Banc Card's business. (*Id.* at ¶ 23).

Banc Card has paid a substantial amount to United Bank for this line of business and the accompanying goodwill – including over $1.5 million since 2008 alone – and, thus, Banc Card has a protected interest in maintaining this line of business and goodwill. (*Id.* at ¶ 23).

United Bank's unlawful conduct has caused and, unless and until enjoined by order of this Court, will continue to cause, great and irreparable harm to Banc Card. Such irreparable harm includes (a) damaged relationships with customers and resulting loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; (b) client confusion related to their relationship with Banc Card; (c) instability at Banc Card's office; and (d) incalculable economic loss. Further, United Bank's wrongful conduct has and will continue to enrich it unjustly.

## III.    ARGUMENT AND AUTHORITY

### A.    Banc Card Satisfies All the Requisites for a Temporary Restraining Order.

Under Tennessee law, a party applying for a temporary restraining order meets its burden by showing that rights are being or will be violated by the adverse party and that it will suffer immediate and irreparable injury, loss, or damage before a notice can be served and a hearing had thereon. Tenn. R. Civ. P. 65.03; *State ex rel. Dean v. Nelson*, 169 S.W.3d 648, 652 (Tenn. Ct. App. 2004); *Green v. Hines*, M2004-01883-COA-R3CV, 2007 WL 2330846, at *5 (Tenn. Ct.

7

App. Aug. 14, 2007).

Courts look to four factors in deciding whether to issue a temporary injunction: (a) the likelihood of success on the merits; (b) the irreparable harm that could result if the court did not issue the injunction; (c) the impact on the public interest; and (d) the possibility of substantial harm to others. *South Central Tenn. Railroad Authority v. Harkas*, 44 S.W.3d 912, 919 (Tenn. Ct. App. 2000); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F.Supp. 1242, 1246 (N.D. Ohio 1992) (citing *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir. 1988)).

As set forth below, Banc Card has satisfied these requirements and, therefore, should be granted a temporary restraining order and a temporary injunction, enjoining and restraining United Bank, its agents and attorneys and all persons in active concert or participation with it, from disclosing Banc Card's confidential business information, from directly soliciting Banc Card customers, and from directly soliciting Banc Card's employees.

     1.     **There Is A Likelihood of Success On The Merits.**

          a.     **United Bank has breached the restrictive covenants in the Agreement.**

As noted above, two restrictive covenants are at issue: a nondisclosure agreement related to confidential information and a non-solicit agreement related to soliciting a specific set of customers for whom Banc Card has provided services. These covenants are enforceable under Georgia law and United Bank has flagrantly violated them. Because the 2011 Agreement was entered into on June 1, 2011 and contemplates the application of Georgia law, (*see* Verified Compl. at Ex. B), the Georgia Restrictive Covenants Act, which became effective May 11, 2011, applies to the interpretation of the restrictive covenants at issue in this case. *See* Ga. Code Ann. § 13-8-50, et seq. (West 2014).

8

(1)    The restrictive covenants in the Agreement are subject to the "least scrutiny."

The Georgia Restrictive Covenants Act explicitly contemplates the relationship at issue between the parties here and provides that, in such situations, a presumption exists that a restrictive covenant between the parties is reasonable:

> (d) In the case of a restrictive covenant sought to be enforced against the owner or seller of all or a material part of:
>
> ...
>
> (5) An equity interest or profit participation, of any other type, in a business, professional practice, or other commercial enterprise, a court shall presume to be reasonable in time any restraint the longer of five years or less in duration or *equal to the period of time during which payments are being made to the owner or seller as a result of any sale referred to in this subsection* and shall presume to be unreasonable in time any restraint more than the longer of five years in duration or the period of time during which payments are being made to the owner or seller as a result of any sale referred to in this subsection, measured from the date of termination or disposition of such interest.

Ga. Code Ann. § 13-8-57 (West 2014) (emphasis added). As such, the non-solicit provision at issue here, which explicitly provides that United Bank cannot solicit "any merchant account that Banc Card is paying to Bank a fee" is presumed reasonable, because Banc Card continues to make payments to United Bank in connection with the agreements between the parties. (*See* Verified Compl., at Ex. D).

The Georgia Restrictive Covenants Act, in large part, has codified Georgia common law, which has traditionally divided restrictive covenants into two categories: "covenants ancillary to an employment contract, which receive strict scrutiny...and covenants ancillary to a sale of business, which receive much less scrutiny...." *Advance Tech. Consultants, Inc. v. Roadtrac, LLC*, 551 S.E.2d 735, 736-37 (Ga. Ct. App. 2001). In making a determination into which category a particular covenant might fall, the "focus" is on the "relative bargaining power of the

9

parties." *Johnstone v. Tom's Amusement Co., Inc.*, 228 Ga. App. 296, 297-300, 491 S.E.2d 394, 397-99 (1997).

"The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing." *Id.* (quoting *Watson v. Waffle House,* 253 Ga. 671, 672, 324 S.E.2d 175 (1985)). In situations where the restricted party's "bargaining capacity" was significantly greater than that of a mere employee and the party was on a "relatively equal footing" in the negotiations, the *least scrutiny* will be applied to the restrictive covenant at issue. *See Am. Control Sys., Inc. v. Boyce*, 303 Ga. App. 664, 667-70, 694 S.E.2d 141, 144-46 (2010).

Here, United Bank, of course, sold its profit participation and/or line of business related to providing credit and debit card processing and settlement services to Banc Card. (*See* Verified Compl. at ¶¶ 7-11). This sale of this business interest/profit participation has been ongoing over the span of thirteen years with compensation for the sale provided to United Bank on an ongoing basis. (*Id.*). Further, United Bank was, at the very least, on an "equal footing" with Banc Card when the agreements between the parties were executed at various points in time over the past thirteen years. United Bank, indeed, demanded a greater percentage of compensation in or around 2006 and the parties agreed to up the percentage of revenue paid to United Bank from 10% to 22.5%. (*Id.* at ¶ 10). Thus, United Bank appears to, in fact, have been in a very strong bargaining position and was, by no means, in the same position as an employee in an employer-employee relationship. Further, the Agreement itself was a template provided by United Bank.

10

(*Id.* at ¶ 11). As such, the restrictive covenants at issue are presumed reasonable and subject to the least scrutiny.

<blockquote>(2)    <u>Under Georgia law, the restrictive covenants are reasonable and enforceable.</u></blockquote>

The non-solicit provision is presumed reasonable. As such, the burden is on United Bank to rebut the presumption that the restriction is reasonable. As a matter of law, it cannot do so. Georgia law provides that restraints on competition "reasonably limited" and "reasonably necessary to protect the interest of the party in whose favor it is imposed" will be enforced. *Carson v. Obor Holding Co., LLC*, 318 Ga. App. 645, 647-53, 734 S.E.2d 477, 481 (2012). Further, courts have stated that

> [w]here the sale of a business is involved, the purchaser's interest in what he has acquired cannot be effectively realized unless the seller agrees not to act so as to diminish the value of what has been sold. It follows that the reasonableness of any covenant not to compete ancillary to the sale of a business must be measured on the basis of whether the restricted activity protects the purchaser's legitimate business interests, i.e., the value of the business and its good will.

*Id.*

First and foremost, Banc Card has paid a hefty premium – more than $1.5 million since 2008 alone – for the line of business / profit-participation it purchased from United Bank and has continued to pay for this line of business for many years. United Bank's attempt to compete immediately would rob Banc Card of the value of the line of business and the goodwill it has purchased. As such, Banc Card's business interest at stake in this dispute is legitimate and the restrictive covenant at issue is imminently reasonable.

Further, Georgia courts have traditionally applied a three-part test in order to determine reasonableness and examine the "duration, territorial coverage, and scope of the activity prohibited by the covenant." *Id.* Georgia law is clear that if the post-termination non-solicit

11

covenant pertains only to clients with whom the party had a business relationship during the term of the agreement, no territorial restriction is required. *See Advance Tech. Consultants, Inc. v. Roadtrac, LLC*, 250 Ga. App. 317, 319-22, 551 S.E.2d 735, 736-38 (2001). Here, of course, the provision at issue relates to a specific set of customers whose information was provided to Banc Card by United Bank as part of the various agreements. As such, both parties are well aware of the exact merchant customers at issue. Thus, no territorial restriction is required.

Further, in a situation involving the sale of a business – as is at issue here – when the covenant has a reasonable geographic limitation, no *time* limitation is required. *Johnstone v. Tom's Amusement Co., Inc.*, 228 Ga. App. 296, 297, 491 S.E.2d 394, 396 (1997). Here, where the territorial restriction is, by law, reasonable, the provision at issue, which is to stay in effect as long as Banc Card continues to pay United Bank in connection with the sale of the line of business, is enforceable. (*See* Verified Compl. at Ex. B).

The Georgia Restrictive Covenants Act explicitly provides that the economic hardship to United Bank is not to be considered in determining reasonableness. *See* Ga. Code Ann. § 13-8-58(d) (West 2014). Even so, the provision only limits United Bank from competing for customers for the provision of card processing and settlement services. United Bank, of course, has not engaged in this business for approximately twelve years. As such, limiting United Bank from competing directly or indirectly for card processing and settlement services is imminently reasonable, especially considering the consideration that Banc Card paid and has continued to pay for this line of United Bank's business. In short, United Bank's apparent desire to immediately engage in this business or form a new, affiliated company to do so is not a legitimate basis for it to blatantly breach the restrictive covenants in place.

12

Finally, the Georgia Restrictive Covenants Act provides that a nondisclosure agreement needs no time limitation:

> (e) Nothing in this article shall be construed to limit the period of time for which a party may agree to maintain information as confidential or as a trade secret, or to limit the geographic area within which such information must be kept confidential or as a trade secret, for so long as the information or material remains confidential or a trade secret, as applicable.

Ga. Code Ann. § 13-8-53(e) (West 2014). As such, these provisions are reasonable and enforceable.

### b. United Bank has tortiously interfered with Banc Card's business relations.

United Bank has also tortiously interfered with Banc Card's business relations with its customers. Tennessee law provides that liability should be imposed on the interfering party if the plaintiff can demonstrate the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).[1]

As noted above, in violation of the restrictive covenants in the Agreement, by directly

---

[1] Georgia law is similar:

> To recover under a theory of tortious interference with business relations, a plaintiff must show defendant: (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a *third party or parties* not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury. Malice, as herein used, is a term to be given a liberal meaning; malicious or maliciously means any unauthorized interference, or any interference without legal justification or excuse.

*Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga. App. 333, 334, 444 S.E.2d 814, 817 (1994).

13

soliciting Banc Card's merchant customers, United Bank has purposefully interfered and will continue to interfere by improper means with Banc Card's relationship with its customers.

### c.  Remedy.

Banc Card needs a reasonable period of time free of United Bank's further initiation of contact to repair the damage caused by United Bank's breaches of contract. United Bank's breaches are, at this point, incapable of being cured by money alone. United Bank's active solicitation of Banc Card's customers has caused a substantial amount of confusion on the part of those customers and, as such, Banc Card has lost substantial customer goodwill. (*See* Verified Compl. at ¶ 22). Further, United Bank's release of Banc Card's confidential information and hiring of a recruiting company to solicit Banc Card's employees has caused instability at Banc Card's offices. (*Id.* at ¶ 20). Under these circumstances, Banc Card asks the Court to restrict United Bank, its agents and attorneys and all persons in active concert or participation with it, from further initiation of contact with any Banc Card customers and from further release of Banc Card's confidential information and solicitation of Banc Card's employees.

### 2.  Irreparable Harm and the Lack of an Adequate Remedy at Law.

Banc Card will be subjected to immediate irreparable harm if the Court does not issue a temporary injunction. The Georgia Restrictive Covenants Act, in fact, explicitly contemplates extraordinary relief for the violation of restrictive covenants: "A court shall enforce a restrictive covenant by any appropriate and effective remedy available at law or equity, including, but not limited to, temporary and permanent injunctions." Ga. Code Ann. § 13-8-58(c) (West 2014).

Likewise, numerous courts in Tennessee and Georgia have determined that the violation of a non-compete agreement fundamentally establishes irreparable harm. Where the nature of the

14

injury would make damages difficult to calculate, irreparable harm can be established. *Zimmer Melia & Associates, Inc. v. Stallings*, No. 3:08-0663, 2008 WL 3887664, at *10 (M.D. Tenn. Aug. 21, 2008). "The likely interference with customer relationships resulting from the breach of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007); *Basicomputer Corporation v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992); *see also Rash v. Toccoa Clinic Med. Associates*, 253 Ga. 322, 326, 320 S.E.2d 170, 173-74 (1984) ("Injunctive relief has repeatedly been found appropriate in cases where [restrictive] covenants...have been found to be enforceable."); (same); *Martinez v. DaVita, Inc.*, 266 Ga. App. 723, 728, 598 S.E.2d 334, 338 (2004) (same); *Zimmer Melia & Associates, Inc. v. Stallings*, No. 3:08-0663, 2008 WL 3887664, at *10 (M.D. Tenn. Aug. 21, 2008) (finding that irreparable harm had been established after the violation of a non-compete by a "highly valued salesman and manager of sales associates"); *Matthews v. Barnes*, 293 S.W. 993, 995-96 (Tenn. 1927) (upholding a non-compete provision and noting that "it is not difficult to understand how complainants might be injured by him [the defendant] engaging in a competitive business" in violation of a non-compete); *Cam Int'l, L.P. v. Turner*, 01-A-01-9203CH00116, 1992 WL 74567, at *4 (Tenn. Ct. App. Apr. 15, 1992) (calling the breach of a covenant not-to-compete injurious to employer); *Nylon Net Co. Inc. v. Amore*, No. 13, 1986 WL 9198, at *3 (Tenn. Ct. App. Aug. 25, 1986) (upholding a non-compete provision and noting the "danger" of the breach of a non-compete and the potential "harm" that would result for the employer); *Curtis 1000, Inc. v. Martin*, No. 3:04-1000, 2006 WL 2981305, at *3 (M.D. Tenn. Oct. 16, 2006) (finding unfair competition to have resulted from the breach of a covenant not-to-compete and upholding an

15

injunction so that employee would not be "rewarded" for breaching the non-compete); *Kelly Services, Inc. v. Marzullo*, 591 F. Supp. 2d 924, 940 (E.D. Mich. 2008) ("The loss of consumer good will and the weakened ability to fairly compete that would result from disclosure of trade secrets and the breach of a non-compete agreement does establish irreparable injury.").

United Bank, under no duress or unequal bargaining position, signed the Agreement and agreed to the restrictive covenants at issue in this case. Banc Card cannot quantify or accurately assess the harm caused by United Bank's flagrant violation of its non-solicit and nondisclosure agreement. (Verified Compl. at ¶ 24).

3. **Balancing Of The Relative Hardships And The Public Interest.**

The substantial likelihood of Banc Card's ultimate success on the merits, and the immediate and irreparable harm to which Banc Card would be subjected, weigh heavily in favor of the entry of an injunction. The balance is not shifted by any harm to United Bank resulting from an injunction, because there is no such harm (or, if any exists, it is minimal).

An injunction would simply require United Bank to adhere to its contractual obligations. Merely requiring United Bank to live up to the promises that it made in exchange for the sale of its line of business for substantial compensation is not any form of "harm" or "hardship."

Moreover, the restrictions on United Bank's activities as a result of an injunction are by no means severe. United Bank is a bank and has not been in the business of providing credit and debit card processing and settlement services for the past twelve years. To the extent United Bank wants to compete in this sphere, it is certainly able to do so and can actively solicit new customers. It cannot, however, compete for the customers that were a part of the line of business it has sold to Banc Card. United Bank has been paid handsomely for this sale and it would

16

destroy the benefit of the parties' bargain if United Bank were able to declare the sale complete and then immediately compete.

Finally, under the circumstances present here, the entry of an injunction will promote the public interest by upholding the sanctity of contracts, by protecting Banc Card's customer relationships and goodwill, and by ensuring that competition is both vigorous and fair. The Sixth Circuit addressed these points in *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.* in holding that the "[e]nforcement of contractual duties is in the public interest" and that issuing the injunction would "hold Defendants to the terms of the bargain they entered into . . . ." 511 F.3d 535, 551 (6th Cir. 2007).

In short, every requisite needed for injunctive relief has been satisfied. An injunction should be entered.

### 4. Bond.

Banc Card seeks nothing more than what it is entitled to had United Bank competed fairly. Thus, the bond should be minimal and Banc Card recommends a bond of $500.

### IV. CONCLUSION

For all the reasons discussed above, Banc Card has established all of the requisites for a temporary restraining order and a temporary injunction. A temporary restraining order and a temporary injunction should be issued immediately, precluding United Bank and those acting in concert with it, including without limitation, Security Card Services, LLC and Express Employment Professionals, from (a) initiating further contact with any of those customers acquired by Banc Card pursuant to the agreements between the parties; (b) initiating further contact with any of Banc Card's employees or sales representatives; and (c) disclosing Banc Card's confidential information.

17

Respectfully submitted this _17th_ day of June, 2014.

_John E. Winters_

John E. Winters (BPR No. 016345)
Kramer Rayson LLP
First Tennessee Plaza
800 South Gay Street, Suite 2500
Knoxville, Tennessee 37929
Tel. (865) 525-5134
Fax (865) 522-5723

-and-

_William M. Outhier by per of pen._

John R. Jacobson (BPR#14365)
William M. Outhier (BPR#15609)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737

*Attorneys for Plaintiff Banc Card Georgia, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the _17th_ day of June, 2014 a true and exact copy of the foregoing has been served via U.S. mail and email on the following:

Bradley J. Miller
725 Highway 321 N
Lenoir City, TN 37771
*Registered Agent for Defendant*

_John E. Winters_

John E. Winters

18

## IN THE CHANCERY COURT FOR LOUDON COUNTY, TENNESSEE

BANC CARD GEORGIA, LLC,    )
                           )
    Plaintiff,         )
                           )
                           )    No. 12239
                           )
                           )
UNITED COMMUNITY BANK,     )
                           )
    Defendant.         )

### NOTICE OF FILING RESTRAINING BOND/INJUNCTION BOND

Plaintiff, Banc Card Georgia, LLC, by and through counsel, hereby submits the attached original Restraining Bond/Injunction Bond and the SureTec Insurance Company Limited Power of Attorney to be filed in the captioned case.

Respectfully submitted this the ___14th___ day of June, 2014.

*John E. Winters*

John E. Winters (BPR No. 016345)
Kramer Rayson LLP
First Tennessee Plaza
800 South Gay Street, Suite 2500
Knoxville, Tennessee 37929
Tel. (865) 525-5134
Fax (865) 522-5723

-and-

*William M. Outhier by Paul Cyre*

John R. Jacobson (BPR#14365)
William M. Outhier (BPR#15609)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700; (615) 320-3737

*Attorneys for Plaintiff Banc Card Georgia, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June, 2014 a true and exact copy of the foregoing has been served via U.S. mail on the following:

Travis McCroskey (BPR #30254)
205 East Broadway Street
Lenoir City, TN 37771
***Attorney for Defendant United Community Bank***

_John E. Winters_
John E. Winters

# IN THE CHANCERY COURT FOR LOUDON COUNTY, TENNESSEE

|                                    |     |                    |
| ---------------------------------- | --- | ------------------ |
| BANC CARD GEORGIA, LLC,            | )   |                    |
|                                    | )   |                    |
|     Plaintiff, | )   |                    |
|                                    | )   | No.  : 12239  |
| v.                                 | )   |                    |
|                                    | )   |                    |
|                                    | )   |                    |
| UNITED COMMUNITY BANK,             | )   |                    |
|                                    | )   |                    |
|     Defendant. | )   |                    |

## RESTRAINING BOND/INJUNCTION BOND

We Banc Card Georgia LLC (the restraining party/principal), and our Surety,

_SURETEC INSURANCE COMPANY_ are held and firmly bound unto United Community Bank in the sum of

$20,000 for which payment, we bind ourselves, our heirs, our executors or administrators, jointly and severally.

**The Condition of the above Obligation is such** that the above named principals prayed for and

obtained from the Chancery Court of Loudon County a **Restraining Order or Injunction** against the above

named parties all as set out in the sworn pleading and order, which are here referred to and made a part of this

Bond.

Now, if the said principals/parties listed above, shall prosecute the said Restraining Order or Injunction

with effect, or in case of failure shall pay the said restrained parties listed above the amount of the judgment at

law with interest, damages, and costs, and all such costs and damages as may be sustained by the wrongful

suing out of said Restraining Order or Injunction, and shall abide by and perform such orders and decrees as the

Court may make in this cause, and shall pay such costs and damages as the Court may order, then the above

obligation to be void; otherwise to remain in full force and effect.

Principal: _(signature)_      Surety: _(signature)_ , ATTORNEY-IN-FACT

Banc Card Georgia, LLC          SURETEC INSURANCE COMPANY

7135 Charlotte Pike Suite 200        1330 Post Oak Blvd Ste 1100
Nashville, TN 37209               Houston, TX 77056

Signed and dated this _18th_ day of _June_ , 2014.

# SureTec Insurance Company
## LIMITED POWER OF ATTORNEY

***Know All Men by These Presents,*** That SURETEC INSURANCE COMPANY (the "Company"), a corporation duly organized and existing under the laws of the State of Texas, and having its principal office in Houston, Harris County, Texas, does by these presents make, constitute and appoint

Gregory E. Nash, Kelly L. Berry, Phillip H. Condra

its true and lawful Attorney-in-fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver any and all bonds, recognizances, undertakings or other instruments or contracts of suretyship to include waivers to the conditions of contracts and consents of surety for:

Three Million Dollars and no/100 ($3,000,000.00)

and to bind the Company thereby as fully and to the same extent as if such bond were signed by the President, sealed with the corporate seal of the Company and duly attested by its Secretary, hereby ratifying and confirming all that the said Attorney-in-Fact may do in the premises. Said appointment shall continue in force until _____9/30/2015_____ and is made under and by authority of the following resolutions of the Board of Directors of the SureTec Insurance Company:

*Be it Resolved,* that the President, any Vice-President, any Assistant Vice-President, any Secretary or any Assistant Secretary shall be and is hereby vested with full power and authority to appoint any one or more suitable persons as Attorney(s)-in-Fact to represent and act for and on behalf of the Company subject to the following provisions:

*Attorney-in-Fact* may be given full power and authority for and in the name of and of behalf of the Company, to execute, acknowledge and deliver, any and all bonds, recognizances, contracts, agreements or indemnity and other conditional or obligatory undertakings and any and all notices and documents canceling or terminating the Company's liability thereunder, and any such instruments so executed by any such Attorney-in-Fact shall be binding upon the Company as if signed by the President and sealed and effected by the Corporate Secretary.

*Be it Resolved,* that the signature of any authorized officer and seal of the Company heretofore or hereafter affixed to any power of attorney or any certificate relating thereto by facsimile, and any power of attorney or certificate bearing facsimile signature or facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached. *(Adopted at a meeting held on 20th of April, 1999.)*

***In Witness Whereof,*** SURETEC INSURANCE COMPANY has caused these presents to be signed by its President, and its corporate seal to be hereto affixed this 21st day of March, A.D. 2013.

SURETEC INSURANCE COMPANY

By: _____
John Knox Jr., President

State of Texas     ss:
County of Harris

On this 21st day of March, A.D. 2013 before me personally came John Knox Jr., to me known, who, being by me duly sworn, did depose and say, that he resides in Houston, Texas, that he is President of SURETEC INSURANCE COMPANY, the company described in and which executed the above instrument; that he knows the seal of said Company; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Company; and that he signed his name thereto by like order.

JACQUELYN MALDONADO
Notary Public
State of Texas
My Comm. Exp. 5/18/2017



Jacquelyn Maldonado, Notary Public
My commission expires May 18, 2017

I, M. Brent Beaty, Assistant Secretary of SURETEC INSURANCE COMPANY, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney, executed by said Company, which is still in full force and effect; and furthermore, the resolutions of the Board of Directors, set out in the Power of Attorney are in full force and effect.

Given under my hand and the seal of said Company at Houston, Texas this __18th__ day of __June__, __2014__, A.D.

_____
M. Brent Beaty, Assistant Secretary

**Any instrument issued in excess of the penalty stated above is totally void and without any validity.**
**For verification of the authority of this power you may call (713) 812-0800 any business day between 8:00 am and 5:00 pm CST.**

| STATE OF TENNESSEE<br>LOUDON COUNTY<br>CHANCERY COURT | SUBPOENA DUCES TECUM<br>(ORDER TO APPEAR) | CASE FILE NUMBER<br>12239 |
|---|---|---|
| **PLAINTIFF**<br>Banc Card Georgia, LLC | **DEFENDANT**<br>United Community Bank | |

**TO:** (Name, Address & Telephone Number of Witness)

Security Card Services, LLC
2653 West Oxford Loop, Suite 108
Oxford, MS 38655
Phone: 877-995-9198
Fax:  866-212-2810

Registered Agent: DeVoe, Richard L
1420 N Lamar Ave
P O Box 1237
Oxford, MS 38655

**Method of Service:**

☐  Loudon Co. Sheriff

X   Personal Service
☐  Out of County Sheriff

You are hereby commanded to appear at the time, date and place specified for the purpose of giving testimony.  In addition, if indicated, you are to bring the items listed.  Failure to appear may result in punishment by fine and/or imprisonment as provided by law.  In lieu of attendance, you can provide the requested documents to Swayze Alford Attorney At Law, 1300 Van Buren Ave, Suite 110, Lafayette, MS 38655 on or before June 27, 2014.

| TIME<br>9:00am | DATE<br>July 1, 2014 | ITEMS TO BRING:<br><br>See attached Exhibit A.<br><br>X Additional List Attached |
|---|---|---|

**PLACE**

Swayze Alford Attorney At Law
1300 Van Buren Ave, Suite 110
Lafayette, MS 38655
Phone: (662) 234-2025

This subpoena is being issued on behalf of
_X___ Plaintiff  _____ Defendants

Attorney: (Name, Address & Telephone Number)
John R. Jacobson (BPR#14365)
William M. Outhier (BPR#15609)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
Telephone:  (615) 320-3700

ATTORNEY'S SIGNATURE: *William M. Outhier by Jen w/p*

AGENT:

AGENT'S SIGNATURE:

DATE ISSUED *June 20, 2014*
Clerk & Master, Loudon County
By: *Connie Black Dc*


**Deputy Clerk and Master**



ADA
FOR ASSISTANCE CALL
865-458-4850

## HIPAA NOTICE

A copy of this subpoena has been provided to counsel for the patient or the patient by mail or facsimile on the _____ day of _____, 20 _____ so as to allow him/her seven (7) days to:

(A) serve the recipient of the subpoena by facsimile with a written objection to the subpoena, with a copy of the notice by facsimile to the party that served the subpoena, and

(B) simultaneously file and serve a motion for a protective order consistent with the requirements of T.R.C.P. 26.03, 26.07 and Local Rule § 22.10.

If no objection is made within seven (7) days of the above date, you shall process this subpoena and produce the documents by the date and time specified in the subpoena. The signature of counsel or party on the subpoena is certification that the above notice was provided to the patient.

## RETURN ON SERVICE

Check one: (1 or 2 are for the return of an authorized officer or attorney; an attorney's return must be sworn to; 3 is for the witness who will acknowledge service and requires the witness's signature.)

1. ____ I certify that on the date indicated below I served a copy of this subpoena on the witness stated above by

_____

2. ____ I failed to serve a copy of this subpoena on the witness because

_____

3. ____ I acknowledge being served with this subpoena on the date indicated below:

| Sworn to and subscribed before me on this ____ day of _____, 20 ___.<br><br>Signature of ___ Notary Public or ___ Deputy Clerk<br><br><br>My Commission Expires: | DATE OF SERVICE<br><br><br><br>SIGNATURE OF WITNESS, OFFICER, ATTORNEY OR ATTORNEY'S AGENT |
| --- | --- |

Submit three:          Original, Witness Copy & File Copy

# EXHIBIT A

## I. DEFINITIONS AND INSTRUCTIONS

1.     The term "document" shall mean and include any and all letters, emails, correspondence, memoranda, notes, work papers, invoices and other writings, tapes, charts, drawings, sketches, photographs, sound recordings, written statements of witnesses or other persons having knowledge of the pertinent facts, computer tapes, discs and programs, and any other data compilations from which information can be obtained or translated, if necessary, into reasonably useful form, whether or not such documents are claimed to be privileged against discovery on any ground.

2.     The term "person" shall include individual persons, firms, associations, partnerships or corporations.

3.     "You" or "your" is defined to include Security Card Services, LLC, your agents, representatives or anyone acting on your behalf.

4.     The term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, or any other communication of any nature whatsoever between or among two or more persons or entities.

## DOCUMENT REQUESTS

1.     All agreements, and any drafts thereof, between you and United Community Bank or any affiliate of United Community Bank.

2.     All communications between you and United Community Bank or any of its affiliates, officers, employees or representatives related to Banc Card Georgia, LLC, any of Banc Card Georgia, LLC's affiliates, officers, employees or representatives, or any merchant, vendor, or customer for which Banc Card Georgia, LLC is providing or has provided credit and debit card processing and settlement services or any related services.

3.     All communications between you and any merchant, vendor, or customer for which Banc Card Georgia, LLC is providing or has provided credit and debit card processing and settlement services or any related services.

4.     All documents provided to you by United Community Bank related in any way to Banc Card Georgia, LLC or any of its affiliates, officers, employees or representatives.

5.     All documents in your possession related in any way to Banc Card Georgia, LLC, any of Banc Card Georgia, LLC's affiliates, officers, employees or representatives, or any merchant, vendor, or customer for which Banc Card Georgia, LLC is providing or has provided credit and debit card processing and settlement services or any related services.

1

6.     All communications between you and Express Employment Professionals or any of its affiliates, officers, employees or representatives related in any way to Banc Card Georgia, LLC or any of its affiliates, officers, employees or representatives.

7.     All documents you provided to Express Employment Professionals related in any way to Banc Card Georgia, LLC or any of its affiliates, officers, employees or representatives.

2