IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

BANC CARD GEORGIA, LLC,

    Plaintiff,

    v.                             Civil Action File No. 3:14-cv-300

UNITED COMMUNITY BANK,

        Defendant.

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION TO EXTEND TEMPORARY RESTRAINING ORDER**

Defendant, United Community Bank ("UCB"), files this Brief in Opposition to the arguments set forth in Plaintiff Banc Card Georgia, LLC's ("Banc Card's) Motion to Extend Temporary Restraining Order, ECF No. 3, and to Banc Card's request for preliminary injunctive relief generally, that latter of which issues will be the subject of the hearing before this Court on July 16, 2014. *See* Order, ECF No. 4.

## I.      INTRODUCTION

This lawsuit arises out of a series of contracts between Banc Card and UCB, pursuant to which UCB agreed that it would refer to Banc Card the names of its banking customers so that Banc Card could offer to provide those customers with credit, debit, and ATM card processing and settlement services ("Card Processing Services"). In return, if UCB's customers agreed to use Banc Card for their Card Processing Services, Banc Card would pay a referral fee to UCB. The parties' contractual relationship, which began in 2003, came to an end on June 1, 2014, when the last contract between the parties expired by its own terms. UCB has advised Banc Card that it will no longer accept any additional referral fees from Banc Card. *See* Compl. Ex. C.

Banc Card has filed, and UCB has now properly removed to this Court, a lawsuit asserting two claims against UCB: (1) for breach of the last contract (the "2011 Agreement"), and (2) for tortious interference with business relations. Banc Card alleges that UCB breached the 2011 Agreement by "competing" with Banc Card, by soliciting Banc Card's customers, and by disclosing the names of certain of Banc Card's employees (which Banc Card refers to as "confidential personnel" information). Banc Card also alleges that UCB tortiously interfered with Banc Card's business relationships by encouraging its customers who were using Banc Card for Card Processing Services not to continue their relationships with Banc Card.

The temporary restraining order currently in effect should be terminated, and Banc Card's request for a preliminary injunction should be denied. As demonstrated herein, Banc Card has not met, and cannot meet, any of the requirements for the extraordinary relief of a preliminary injunction.

As a threshold matter, Banc Card's request for a preliminary injunction should be denied because it cannot show a likelihood of success on the merits of its breach of contract claim. UCB has not breached the 2011 Agreement, which has expired, and even if it had, the noncompetition agreement in that contract is unenforceable.

A critical fact in this case – one that Banc Card ignores – is that the "customers" that UCB agreed to refer to Banc Card, for Banc Card's benefit in its Card Processing Services business, were (and remain) UCB's banking customers. Whatever the noncompetition provision may mean, it is, indisputably, mutual: "Both parties agree that they can not directly or indirectly compete on any merchant account that Banc Card is paying to [UCB] a fee." Compl. Ex. B, ECF No. 1-2, at ¶ 4. Whatever UCB is allegedly prohibited from doing applies with equal force to Banc Card; whatever UCB is allegedly prohibiting from doing, Banc Card is also prohibited

from doing. Thus, the noncompetition provision should not be construed to mean, as Banc Card argues, that UCB improperly "competes" by soliciting, interacting or communicating with its own banking customers, because this is precisely what Banc Card has been doing and desires to continue doing with these very same UCB customers. If UCB's conduct were in breach of the noncompetition provision, then Banc Card would be in breach as well. The agreement should not be construed in such a manifestly unreasonable manner.

Even if the noncompetition provision could be construed in a manner that means that UCB had breached the 2011 Agreement, which UCB denies, the noncompetition provision is not enforceable. It does not have the benefit of any presumption of reasonableness, and is in fact unenforceably vague and unreasonable under Georgia law, which Banc Card agrees governs its breach of contract claim.

Nor has UCB breached any nonsolicitation provision in the 2011 Agreement. There is no express nonsolicitation provision in the contract, and reading such a provision into the contract would prohibit UCB from interacting with *its own banking customers* – an absurd interpretation.

Likewise, there is no legal basis for a claim that UCB has breached the contract's confidentiality provision by disclosing the names of certain of Banc Card's employees. The confidentiality provision did not expressly prohibit disclosure of employees' names and, moreover, the fact that these employees are or were employed by Banc Card is publicly, and readily, available on the Internet.

Banc Card also cannot demonstrate a likelihood of success on the merits of its only other claim, for tortious interference. Although Banc Card alleges that UCB interfered with Banc Card's relationships with certain of its customers, these customers are in fact UCB's own banking customers. Therefore, as a matter of law, UCB cannot have undertaken the actions

4823008.5/2600-L
Case 3:14-cv-00300-TAV-HBG   Document 7   Filed 07/14/14   Page 3 of 25   PageID #: 103

alleged by Banc Card "without privilege," which is an essential element of a claim for tortious interference under Georgia law.

Not only has Banc Card failed to establish a likelihood of success on the merits, but it also cannot meet any of the other requirements for the issuance of a preliminary injunction. Banc Card has not demonstrated that it will suffer irreparable harm absent preliminary injunctive relief. Instead, the vague, conclusory harm it alleges could be compensated for adequately with monetary remedies if Banc Card ultimately were to prevail on the merits of its claims. Nor has Banc Card shown, as it must, that a preliminary injunction would cause no harm to others or that it would serve the public interest. To the contrary, a preliminary injunction would harm the public interest by impeding the rights of UCB's banking customers to freely choose where to take their Card Processing Services.

For all these reasons, and as set forth more fully herein, UCB respectfully requests that the Court deny Banc Card's request for preliminary injunction in its entirety.

## II. FACTUAL BACKGROUND

### A. The Parties' Relationship

The parties' business relationship began in 2003, when UCB, a regional bank headquartered in Blairsville, Georgia, entered into a Referral Agreement (the "2003 Agreement") with Banc Card, a business that provides Card Processing Services to retail merchants and other customers. Around the same time, UCB and Banc Card also entered into a "Third Party Vendor/Contractor Agreement," naming Banc Card as a "Vendor to perform services for [UCB]." Compl. Ex. A. Neither of these agreements contained a noncompetition provision. Before entering into the 2003 Agreement, UCB also provided Card Processing Services to retail merchants and other companies.

Banc Card incorrectly alleges that UCB "sold this line of business and related goodwill to Banc Card." *See* Compl., ECF No. 1-2, at ¶ 2; *see also* 2003 Agreement, Compl. Ex. A. There was no acquisition or sale to Banc Card of any asset or any part of UCB's business. *See* Decl. of Bill Gilbert [hereinafter "Gilbert Decl."], at ¶ 3.[1] Instead, the parties expected that UCB would provide Banc Card with the names of its existing customers so Banc Card could offer those customers Card Processing Services. *Id.* at ¶ 8.

In 2011, the parties entered into another Referral Agreement (the "2011 Agreement"), which is the contract at issue in this lawsuit. The 2011 Agreement includes a noncompetition clause. Paragraph 4 of the 2011 Agreement, entitled "Confidentiality," states in its entirety:

> Each party shall treat as confidential all information concerning the business of the other party or any Merchant that is learned during the course of performance hereunder. Such confidential information shall include, without limitation, any trade secrets, agreements, policies and procedures, processes, programs, know how, financial information, pricing models or information, Merchant names, customer lists, Merchant lists, personnel information and computer and other technical data. Both parties agree that they can not directly or indirectly compete on any merchant account that Banc Card is paying to a Bank fee. This paragraph shall survive termination of this Agreement. Both parties agree to execute United Community Banks [sic] 3rd party Vendor/Contract Agreement as attached and labeled Exhibit "A."

Compl. Ex. B. at ¶ 4. Around the same time, the parties also entered into a Third Party Vendor/Contractor Agreement similar to the one entered into in 2003. Compl. Ex. B. The 2011 Agreement expired on June 1, 2014.

The 2011 Agreement is governed by Georgia law. *Id.* at ¶ 8 (providing that the Agreement "is made and shall be construed under the laws of the State of Georgia without regard to any conflicts of law provisions thereof.").

---

[1] The Declaration of Bill Gilbert, Director of Banking at UCB, is attached hereto as Exhibit A.

Like the 2003 Agreement, the 2011 Agreement does not provide for the sale of any asset or goodwill, but simply is a referral agreement pursuant to which Banc Card agreed to pay referral fees in exchange for UCB's providing Banc Card, "from time to time," with a list of UCB's customers whom Banc Card could solicit for Card Processing Services. *Id.* at 1. When the 2011 Agreement expired on June 1, 2014, UCB elected to reject and no longer accept any referral fees from Banc Card under the Agreement, effective June 1, 2014. *See* Compl. Ex. C.

### B.    Procedural Background

#### 1.    Chancery Court Action

Banc Card filed this lawsuit on June 17, 2014, in the Chancery Court of Loudon County. Banc Card has not effected proper or valid service of its Complaint, or a summons, on UCB. Instead, counsel for Banc Card delivered a copy of the Complaint, along with a transmittal letter to a UCB bank teller at a UCB branch office in an envelope with UCB's in-house attorney's name listed on it as registered agent. *See* Decl. of Steve Hurst [hereinafter Hurst Decl.], at ¶¶ 2-3.[2] Banc Card's counsel delivered these papers by using the drive-through banking option and sending the envelope to the teller via the chute used for drive-through banking. *See id.* at ¶ 3. Such service is insufficient under Tennessee law.[3] As of the date of filing this brief, Banc Card has still not effected proper or valid service of this lawsuit on UCB.

---

[2] The Declaration of Steve Hurst, Regional President of the East Tennessee market of UCB, details the events of the ineffective attempt at service, and is attached hereto as Exhibit B.

[3] The teller, Ms. Crox, is not expressly authorized to accept service of process on behalf of UCB, Hurst Decl., at ¶ 4, and does not have apparent authority to accept service. *See* Tenn. R. Civ. P. 4.04(4) (requiring service "[u]pon a domestic corporation, or a foreign corporation doing business in this state, [be made] by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation"). In *Hall v. Haynes*, 319 S.W.3d 564, 574-76 (Tenn. 2010), the Tennessee Supreme Court held that service was deficient where the employee served was not expressly authorized to accept service on behalf of the defendant company, and

1152003.5776601

At the time it filed its Complaint, Banc Card also filed an Application for Temporary Restraining Order and Memorandum in Support Thereof. *See* Appl. for TRO, ECF No. 1-2; Mem. in Supp. of Appl. for TRO [hereinafter TRO Br.], ECF No. 1-2. The Loudon County Chancery Court held a hearing on Banc Card's application for a TRO on June 18, 2014, the morning after the Complaint was filed, and orally granted the TRO at that time. A few days later, on June 23, 2014, the Chancery Court entered a written TRO.

The TRO enjoined UCB from "(a) initiating further contact with any of those customers acquired by Banc Card pursuant to the agreements between the parties; (b) disclosing Banc Card's confidential business information, including, among other things, Banc Card's personnel information to third parties; and (c) directly soliciting Banc Card's employees and/or sales representatives." Apart from the merits of the TRO, which are discussed below, the TRO entered by the Chancery Court, and continued by this Court, is overly broad and inconsistent with the 2011 Agreement. In particular, it purports to prohibit UCB from initiating contact with UCB's own existing customers, with whom UCB must have the ability to initiate contact in connection with its banking relationship. The TRO also is overly broad and inconsistent with the 2011 Agreement in that it enjoins UCB from soliciting Banc Card's employees and/or sales representatives, despite the fact that the 2011 Agreement does not contain the word "solicit" in any form, and more specifically does not prohibit solicitation of either party's employees.

### 2. Removal to Federal Court

UCB removed the case to this Court on June 30, 2014. Banc Card does not contest that the Court has diversity jurisdiction over this matter. Banc Card asked the Court to extend the TRO obtained in the Chancery Court until such time as the Court set a hearing. *See* Mot. to

---

the employee's job responsibilities made clear that it was not reasonable to imply such authority on her part.

4820-9083-3766v1

Extend TRO, ECF No. 3.  The Court issued a Temporary Restraining Order on July 8, 2014, to remain in effect through the injunction hearing scheduled for July 16, 2014.  *See* Temporary Restraining Order, ECF No. 4.

## III.    ARGUMENT AND CITATION OF AUTHORITY

A preliminary injunction is an "'an extraordinary remedy never awarded as a matter of right.'"  *Thompson v. Hayes*, 748 F. Supp. 2d 824, 830 (E.D. Tenn. 2010 (Varlan, J.) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).  Such relief "'should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.'"  *Id.* (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

The Court must consider four factors on a request for preliminary injunction:

> (1) whether the movant would suffer irreparable harm without the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of success on the merits as to each claim.

*Id.*[4]  The four factors are not prerequisites, and no single factor is dispositive.  *Id.*  However, a "finding that there is no likelihood of irreparable harm or no likelihood of success on the merits is often fatal."  *Thompson*, 748 F. Supp. 2d at 830.

---

[4] Federal law applies to the Court's consideration of the factors relevant to granting a preliminary injunction, while state law applies to the determination of the first factor (whether the movant has demonstrated a likelihood of success on the merits).  *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007) ("While we apply our own procedural jurisprudence regarding the factors to consider in granting a preliminary injunction, we apply Michigan law to determine whether Plaintiff has met the first of these factors by demonstrating a substantial likelihood of success on the merits of his underlying diversity action.").

As explained below, Banc Card has not shown, and cannot show, that any of the four factors weigh in its favor. Therefore, the motion for preliminary injunction must be denied.

**A.      Banc Card Has Not Demonstrated a Likelihood of Success on the Merits.**

To show a "likelihood of success on the merits," the movant must "demonstrate 'more than a mere possibility of success.'" *Thompson*, 748 F. Supp. 2d at 833 (emphasis added) (quoting *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 683 (W.D. Tenn. 2009)). This showing "varies inversely with the other three factors"; that is, "where the other three factors strongly favor issuance of an injunction, the movant may make a lesser showing of a likelihood of success on the merits." *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 WL 2370338 (E.D. Tenn. Aug. 15, 2006) (Varlan, J.), *aff'd*, 246 F. App'x 969 (6th Cir. 2007).

Here, Banc Card has not shown, and cannot show, a likelihood of success on the merits of its claims.

**1.      Banc Card cannot demonstrate a likelihood of success on the merits of its claim for breach of the noncompetition provision.**

As a threshold issue, UCB has not breached the 2011 Agreement. In particular, the "customers" to which Banc Card claims the noncompetition provision applies are UCB's banking customers – independent of any relationship Banc Card may have with those entities or individuals as a result of UCB's providing their names to Banc Card pursuant to a Referral Agreement. Whatever the noncompetition provision may mean, it is, indisputably, mutual.[5] The provision should not be construed to mean, as Banc Card argues, that UCB improperly "competes" by soliciting, interacting with or communicating with its own banking customers, because this is precisely what Banc Card desires to do with the very same customers. If UCB's

---

[5] *See supra* Part II.A. (quoting noncompetition provision of 2011 Agreement).

1152009.572600.1

conduct were in breach of the noncompetition provision, then Banc Card would be in breach as well. Such an interpretation is manifestly unreasonable.

Additionally or alternatively, Banc Card's interpretation of the noncompetition provision in the 2011 Agreement would render it unenforceable as a matter of Georgia law as an unreasonable restraint of trade. Significantly, the provision is not entitled to any statutory presumption of reasonableness under Georgia law, without which it is fatally vague.

It is well-established under Georgia law, which governs the contract at issue, that contracts in general restraint of trade are void as against public policy in Georgia, and contracts in partial restraint of trade may be enforceable only if reasonable (*i.e.,* narrowly drawn). *See Brewer v. Lamar*, 69 Ga. 656, 659 (1882). As the Georgia Supreme Court stated more recently:

> [C]ontracts in unreasonable restraint of trade are contrary to public policy and void, because they tend to injure the parties making them, diminish their means of procuring livelihoods . . . .; discourage industry and enterprise, and diminish the products of ingenuity and skill; prevent competition and enhance prices, and expose the public to all the evils of monopoly.

*Atlanta Bread Co. Int'l, Inc. v. Lupton-Smith*, 285 Ga. 587, 588-89, 679 S.E.2d 722, 724 (2009) (alteration in original) (quoting *Rakestraw v. Lanier*, 104 Ga. 188, 194, 30 S.E. 735 (1898)).

The noncompetition provision in the 2011 Agreement is more than a partial restraint of trade; a partial restraint is one "'"as to particular places and persons, or for a limited time,"'" *Brewer*, 69 Ga. at 659, and the noncompetition provision here contains no such limitations. But even if it were considered a partial restraint of trade, the noncompetition provision nonetheless is unenforceable because it is vague, unreasonable, and far from narrowly drawn.

### a. The noncompetition provision is not presumptively reasonable.

The recently enacted Georgia Restrictive Covenants Act affords a presumption of reasonableness to certain noncompetition provisions. *See* O.C.G.A. §§ 13-8-56, 13-8-57. The provision at issue here does not fit within any of these statutory presumptions.

Banc Card has only one argument as to why the noncompetition provision is reasonable and therefore enforceable under Georgia law: the contracts between the parties involved the "sale of assets." Reasoning from this false premise, Banc Card claims that the noncompetition provision at issue is presumptively reasonable under O.C.G.A. § 13-8-57(d), because, even though the 2011 Agreement has expired by its own terms, "payments are still being made" for the sale of assets. *See* TRO Br., at 9-10.

Section 13-8-57(d) provides:

> In the case of a restrictive covenant sought to be enforced against the *owner or seller of all or a material part of*:
>
> (1)    The *assets of a business*, professional practice, or other commercial enterprise;
>
> (2)    The shares of a corporation;
>
> (3)    A partnership interest;
>
> (4)    A limited liability company membership; or
>
> (5)    *An equity interest or profit participation*, of any other type, in a business, professional practice, or other commercial enterprise,
>
> *a court shall presume to be reasonable* in time any restraint the longer of five years or less in duration or equal to the period of time during which payments are being made to the owner or seller as a result of any sale referred to in this subsection and shall presume to be unreasonable in time any restraint more than the longer of five years in duration or the period of time during which payments are being made to the owner or seller as a result of any sale referred to in this subsection, measured from the date of termination or disposition of such interest.

O.C.G.A. § 13-8-57(d) (emphasis added).

Banc Card's argument fails because this statute is inapplicable.  Not only does Banc Card's relationship with UCB fail to fit any of the categories listed in section 13-8-57(d), it also does not meet the statute's definition of "sale."  *See id.* § 13-8-51(16) (defining "sale" as "any sale or transfer of the good will or substantially all of the assets of a business or any sale or transfer of a controlling interest in a business, whether by sale, exchange, redemption, merger, or otherwise").  The "fees" contemplated by the 2011 Agreement were for referrals only; they were not payments for any type of sale.  *See* Compl. Ex. B.  Banc Card has offered no evidence that there was any "sale" between the parties even remotely falling within the statutory definition, whereas UCB has offered evidence that *no* such transaction occurred.  *See* Gilbert Decl., at ¶ 3.  Likewise, there was no "profit participation" agreement by which Banc Card participated or shared in UCB's profits.  *See id.* at ¶ 4.

Banc Card's repeated statements in court filings that there was a sale of business and/or profit participation[6] are wholly unsupported and untrue.  Instead, the parties' contract was for referrals only.  Not only is it entitled "Referral Agreement," it expressly states that its "purpose" is to govern the parties' rights "with respect to the *referral* by [UCB] to Banc Card from time to time . . . of a list of customers . . . ."  Compl. Ex. B, at 1 (emphasis added).[7]  A referral agreement, without more, is not the equivalent of a sale, profit-sharing relationship, or any of the other types of transactions contemplated by O.C.G.A. § 13-8-57(d).

Thus, O.C.G.A. § 13-8-57(d) – the only basis for Banc Card's argument that the noncompetition prevision is reasonable – is inapplicable to the 2011 Agreement and the parties'

---

[6] *See, e.g.,* Compl., at 7; TRO Br., at 10.

[7] The 2011 Agreement contemplated only that UCB *may refer* customers to Banc Card – customers who *may* elect to enter into agreements with Banc Card, as a result of "the direct solicitation efforts *of Banc Card*," and not because UCB sold those customers, or guaranteed those customers would do business with Banc Card.  Compl. Ex. B, at ¶ 1 (emphasis added).

relationship, which consists simply of a referral-for-fee agreement. Banc Card therefore cannot

invoke any statutory presumption of reasonableness for the provision at issue. Because Banc

Card has identified no other legal basis under Georgia law pursuant to which the noncompetition

provision – indisputably at least a partial restraint of trade – is valid and enforceable under

Georgia law, the breach of contract claim based on this provision fails.

### b. The noncompetition provision is impermissibly vague.

Without a presumption of reasonableness, the noncompetition provision in the 2011

Agreement is void for vagueness because it offers no limit in duration, territorial effect, or scope.

At the most basic level, the provision is hopelessly vague in that it prohibits *both* parties from

"compet[ing]," without explaining or describing which specific acts of competition are

proscribed. *See* Compl. Ex. B, at ¶ 4 ("Both parties agree that they cannot directly or indirectly

compete . . . ."). Banc Card claims this provision is enforceable, in which case it would be

binding on Banc Card as well – but Banc Card has brought this suit to keep UCB from

competing against Banc Card, so that Banc Card can be free to compete against UCB.[8]  Banc

Card cannot have it both ways.

Properly understood, the noncompetition provision applies, even after the expiration of

the 2011 Agreement, if UCB were to continue to accept referral fees from Banc Card. The idea

is that neither party can compete for customers, even after the expiration of the contract, if UCB

---

[8] Banc Card's unreasonable interpretation of the agreement would mean that Banc Card also
could not solicit any customers. To the extent that it did, Banc Card would not be permitted to
seek injunctive relief against UCB because of its own unclean hands. *See Morgan Stanley DW,
Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1380 (N.D. Ga. 2001) ("[Plaintiff] is estopped by its
unclean hands from seeking equitable relief from this Court. Equity does not permit [plaintiff] to
enforce restrictive covenants against Defendants . . . when it actively recruits brokers from
competitors and encourages them to retain and use copies of client records to solicit the transfer
of client accounts from those competitors without regard to any agreements between the brokers
and the competitor.").

is continuing to receive and accept referral fees from Banc Card for particular customers. Upon expiration of the 2011 Agreement, UCB elected to no longer accept fees from Banc Card under the Agreement. *See* Compl. Ex. C.

Partial restraints of trade are disfavored in Georgia, and will be upheld only when narrowly drawn – more specifically, when strictly limited in time, territorial effect, and scope. *See Beckman v. Cox Broad. Corp.*, 250 Ga. 127, 129, 296 S.E.2d 566, 568 (Ga. 1982); *Alice v. Robett Mfg. Co.*, 328 F. Supp. 1377, 1380 (N.D. Ga. 1970). The noncompetition provision at issue here is unreasonably indefinite in duration. *See* Compl. Ex. B, at ¶ 4 (providing that "[t]his paragraph shall survive termination of this Agreement," without any corresponding limitations). Banc Card would contend that the duration of the provision is limited by the language "on any merchant account that Banc Card is paying to Bank a fee," *see id.*, but that language is equally indefinite, and presumably such payments could continue for years. Moreover, Banc Card interprets it as giving Banc Card power to unilaterally control the duration of the covenant by continuing to pay fees to UCB for as long as it desires to keep UCB from "competing," whatever that may mean. An indefinite covenant not to compete is unreasonable and unenforceable. *See Gandolfo's Deli Boys, LLC v. Holman*, 490 F. Supp. 2d 1353, 1349 (N.D. Ga. 2007) (finding that, "[u]nder Georgia law, a tolling provision that potentially extends the duration of a covenant not to compete indefinitely renders the covenant unreasonable and unenforceable").[9]

---

[9] The noncompetition provision is impermissibly vague not only because it fails to define what is meant by the phrase "directly or indirectly compete," *see* Compl. Ex. B., at ¶ 4, but it also fails to define any limit to its territorial reach. In *Hamrick v. Kelley*, 260 Ga. 307, 308, 392 S.E.2d 518, 519 (1990), for example, the noncompetition provisions at issue imposed a geographical restriction of a 75-mile radius of the Metro Atlanta area. *Id.* The court found the provision vague because "such a radius is impossible to define because there is no clear definition of the area comprising Metro Atlanta, Georgia," and thus the contract must fail. *Id.* ("While unreasonableness as to area may be corrected by the 'blue pencil' in a contract for the sale of a

These flaws are fatal because a court cannot reform a provision that is otherwise unenforceable for vagueness. *See Clower v. Orthalliance, Inc.*, 337 F. Supp. 2d 1322, 1334 (N.D. Ga. 2004) (applying Georgia law) ("A court may 'blue-pencil' the covenant to make an offending covenant term reasonable, although it cannot actually reform a covenant that is void for vagueness." (citing *Hamrick*)); *accord Hamrick*, 260 Ga. at 308, 392 S.E.2d at 519.[10]

The noncompetition provision in the 2011 Agreement does not put either party on notice of exactly what it means to "compete" (and therefore to violate the terms thereof), and thus is fatally vague and unenforceable under Georgia law. Banc Card has not demonstrated a likelihood of success on its claim for breach of the noncompetition provision.

### 2. Banc Card cannot demonstrate a likelihood of success on the merits of its claim for breach of a nonsolicitation provision.

Banc Card also alleges that UCB violated the 2011 Agreement by soliciting Banc Card's customers. Compl., at ¶ 22; TRO Br., at 6. To the extent this allegation forms the basis of any breach of contract claim,[11] it fails for the simple reason that the 2011 Agreement does not contain a nonsolicitation provision. *See generally* Compl. Ex. B.

Noncompetition provisions and nonsolicitation provisions are similar, but independent, concepts under Georgia law. *See, e.g., Riddle v. Geo-Hydro Eng'rs, Inc.*, 254 Ga. App. 119, 120, 561 S.E.2d 456, 458 (2002) (referring to "noncompete covenant" and "nonsolicit covenant" as separate provisions). If the parties had intended to include a prohibition on "solicitation" in

---

business, we find no law authorizing such a 'blue pencil' correction for *vagueness*." (emphasis added)).

[10] The *Hamrick* court also stated that the remedy for vagueness is an action for reformation, not a suit for injunctive relief to enforce the contract. 260 Ga. at 308, 392 S.E.2d at 519.

[11] It is not clear from Count I of Banc Card's Complaint whether it bases its breach of contract claim on a breach of a nonsolicitation provision, but Banc Card has referred in filings to "the non-solicit provision at issue here." *E.g.,* TRO Br., at 9; *id.* at 8.

the Agreement, they could have added that concept or word to paragraph 4, or defined "compete" to include "solicitation," but they did not. *See* Compl. Ex. B, at ¶ 4.[12]

Banc Card's "solicitation" allegations thus have no contractual or legal basis. As discussed above, the customers at issue are UCB's banking customers. Likewise, to the extent Banc Card contends that UCB breached the 2011 Agreement by "soliciting" any of Banc Card's sales representatives, which the TRO also provides, there is similarly no contractual or legal basis for such a claim. *See* TRO Br., at 6; *see also* Compl. Ex. B, at ¶ 4 (containing no such prohibition).

Thus, Banc Card has failed to establish a likelihood of success on its claim that UCB has breached the contract by "soliciting" any customers.

> **3.    Banc Card cannot demonstrate a likelihood of success on the merits of its claim for breach of a confidentiality provision.**

As the basis for this breach of contract claim, Banc Card relies on the portion of paragraph 4 of the 2011 Agreement that provides, "Each party shall treat as confidential all information concerning the business of the other party" and that "[s]uch confidential information shall include, without limitation, . . . personnel information." Compl. Ex. B, at ¶ 4. The allegation underlying this claim is that UCB "releas[ed] the names of Banc Card's employees to Security Card Services, LLC," which, "on information and belief, has hired Express Employment Professionals, a recruiting service, to solicit a number of Banc Card employees and sales representatives." Compl. ¶¶ 19, 29.

Banc Card has offered no support for the assertion that the fact that certain individuals work for Banc Card constitutes "personnel information." Moreover, there can be no question

---

[12] Of course, the fact that Banc Card claims that the noncompetition provision includes an implicit nonsolicitation concept merely confirms that the noncompetition provision is hopelessly and fatally vague, and fails to put the parties on notice of what it means to "compete."

that this information is not "confidential."  To the contrary, this information is public: nearly all, if not all, of the employee names listed in the Complaint are publicly available on the Internet with minimal searching.  *See id.* ¶ 20 ("Express Employment Professionals has, in fact, directly contacted the following Banc Card employees by phone, email or both: Mark Dougherty, Tyler Cook, Heather Shell, TomTaratsas, Julia Chandler, Jack Paler, Matt Dougherty, Michael Bell, and Marc Potvin . . . ."); *accord* TRO Br., at 6.  *See also* Decl. of Rebecca Griffis [hereinafter "Griffis Decl."], at ¶¶ 3-12.[13]  A simple Google search reveals websites listing these individuals as presently or previously employed by, or affiliated with, Banc Card.  *Id.*

Information that is publicly available is not confidential.  *See Williams v. Coffee Cnty. Bank*, 168 Ga. App. 149, 150, 308 S.E.2d 430, 432 (1983) (rejecting claim for breach of implied duty of confidentiality where "the only information disclosed was a matter of public record and indisputedly was not confidential").  Furthermore, since such information can be obtained through public sources (*i.e.,* the Internet) and thus is not confidential, Banc Card cannot establish that it was harmed by UCB's allegedly disclosing such information.  *See id.* (finding no way in which party was harmed where information was available through public authorities).

Accordingly, Banc Card's claim that UCB breached the confidentiality provision by disclosing these individuals' names is meritless.

      **4.**     **Banc Card cannot demonstrate a likelihood of success on the merits of its tortious interference claim.**

As Banc Card cannot establish a breach of contract claim because, among other things, the 2011 Referral Agreement has expired by its own terms, Banc Card also cannot establish a claim for tortious interference with business relations based on the same underlying allegations. In *Rinks v. Courier Dispatch Group, Inc.*, a federal district court applying Georgia law found that

---

[13] The Declaration of Rebecca Griffis is attached hereto as Exhibit C.

-17-

the plaintiff, who sought injunctive relief on a tortious interference claim, brought that claim in an attempt to enforce the terms of a noncompete agreement. No. Civ.A.1:01-CV0678JOF, 2002 WL 32093321, at *4 (N.D. Ga. July 17, 2002). The noncompete agreement, however, was no longer in effect. *Id.* As a result, the court found that the defendant "no longer ha[d] anything to enforce, and there is no action that the court can enjoin it from taking," and the plaintiff's tortious interference claim therefore was moot. *Id.*

Banc Card claims that UCB has "attempted to cause a termination of" Banc Card's existing business relationships with merchants "by contacting the merchants and encouraging them not to renew their relationship with Banc Card." Compl. ¶ 34. To recover under Georgia law[14] on a claim of tortious interference with business relations, Banc Card must show that UCB "(1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury." *Renden, Inc. v. Liberty Real Estate*

---

[14] A federal court exercising diversity jurisdiction applies the choice-of-law rules of the forum state. *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999); *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, No. 09-2127-STA, 2011 WL 4915886, at *5 (W.D. Tenn. Oct. 17, 2011). "Tennessee has adopted the 'most significant relationship' test of the Restatement (Second) of Conflict of Laws to choice-of-law questions for tort claims such as . . . tortious interference with a contractual relationship." *Carbon Processing*, 2011 WL 4915886, at *5. "Under this approach, 'the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation.'" *Id.* (noting this is a "'default' rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation)". *Id.* Generally, "the law of the state where the injury occurred will have the most significant relationship to the litigation." *Id.*

In this case, Banc Card alleges that UCB tortiously interfered with merchants with whom Banc Card has existing business relationships. Compl. ¶¶ 32, 34. The only merchants mentioned in the Complaint are The Ridges Resort and Marina and The Griddle Cafe & Deli, both of which are located in Georgia. *Id.* at ¶ 22. UCB's headquarters is also in Georgia. Under the significant relationship test as adopted in Tennessee, *see Carbon Processing*, 2011 WL 4915886, at *5, and given the fact that Georgia law governs the 2011 Agreement, *see* Compl. Ex. B., at ¶ 4, Georgia law should apply to all of the claims asserted in Banc Card's Complaint.

*Ltd. P'ship III*, 213 Ga. App. 333, 334, 444 S.E.2d 814, 817 (1994) (emphasis omitted); *accord*

*ASC Constr. Equip. USA, Inc. v. City Commercial Real Estate, Inc.*, 303 Ga. App. 309, 313, 693

S.E.2d 559, 563-64 (2010).

Banc Card cannot succeed on the merits of its tortious interference claim because, as a

matter of law, UCB could not have acted "without privilege" – an essential element of a tortious

interference claim – in contacting the merchants named in the Complaint.  *See* Compl. ¶ 22

(alleging that UCB contacted The Ridges Resort and Marina and The Griddle Cafe & Deli).

Acting "without privilege" requires the defendant to be "an intermeddler or 'stranger' to the

business relationship at issue."  *ASC Constr.*, 303 Ga. App. at 313, 693 S.E.2d at 564.  UCB is

not a stranger to the business relationships with merchants alleged in the Complaint because

those merchants are also UCB's customers.  *See* Gilbert Decl., at ¶ 5.  An entity, like UCB, that

is "a party 'to an interwoven contractual arrangement' is not a stranger to any of the contracts or

business relationships that are part of the contractual arrangement and cannot be held 'liable for

tortious interference with any of [those] contracts or business relationships.'"  *ASC Constr.*, 303

Ga. App. at 313, 693 S.E.2d at 564 (alteration in original).[15]

Therefore, Banc Card has not demonstrated, and cannot demonstrate, a likelihood of

prevailing on its tortious interference claim.

---

[15] Additionally, to the extent Banc Card alleges that UCB's actions constitute "an improper means" giving rise to a tortious interference claim "because it results in a breach of the contract between [UCB] and Banc Card," Compl. ¶ 35, this claim fails for the same reasons.  UCB cannot, as a matter of Georgia law, be liable for tortiously interfering with a contract to which UCB was a party; UCB would not be a stranger to such contract and thus could not have acted "without privilege" with respect to that contract.

**B.    Banc Card Has Not Demonstrated A Likelihood of Irreparable Harm Absent Preliminary Relief.**

A movant's harm from the denial of a preliminary injunction is "'irreparable if it is not fully compensable by monetary damages.'" *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (quoting *Overstreet*, 305 F.3d at 578). Such injury is not presumed; it must be proved. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 970 (6th Cir. 2002). In *Patio Enclosures*, even where the express language of the noncompetition agreement contained "a stipulation that any violation of the agreement would create irreparable harm," the court found that irreparable harm was not present. *Id.* Banc Card must support this claim with sufficient evidence, which it has yet to offer. *See Malibu Boats, LLC v. Nautique Boat Co.*, No. 3:13-cv-656-TAV-HBG__ F. Supp. 2d ___, 2014 WL 417886, at *18, 19 (E.D. Tenn. Feb. 4, 2014) (Varlan, J.) (finding plaintiff's contentions of reputational harm based on loss of goodwill were "not supported by sufficient evidence at this stage of the litigation so as to support a finding of immediate and irreparable harm," and denying plaintiff's motion for preliminary injunction).

This factor also requires a causal connection between the non-movant's alleged actions and the movant's purported irreparable harm. *See Malibu Boats*, 2014 WL 417886, at *17 ("In light of the evidence presented by both parties, at this time the Court cannot determine that there is a likely causal connection between the allegedly infringing components of NSS and plaintiff's alleged harm of a decreased potential to gain market share."). If the alleged irreparable harm can be attributed to any other reason, preliminary injunctive relief is not warranted. *See Dellwood Foods, Inc. v. Kraftco Corp.*, 420 F. Supp. 424, 427 (S.D.N.Y. 1976) (rejecting preliminary injunction where non-movant argued, *inter alia*, that movant's claimed loss of customers "was due in part to reasons other than [the non-movant's] competition").

### a.  There is no causal connection.

Banc Card cannot satisfy this factor because it has not demonstrated any causal connection between UCB's alleged breach and Banc Card's loss of customers.  In *Dellwood Foods*, a federal district court rejected the movant's claim that the non-movant had caused the movant to lose customers where the movant's proffered documentation showed it had lost only a small amount of applicable business to date.  *See* 420 F. Supp. at 427 ("[E]ven assuming that Kraftco's actions were the sole cause of Dellwood's loss of customers, Dellwood has not shown this court any substantial evidence to support its claim of irreparable injury.").  Banc Card has not shown that its purported irreparable harm is attributable solely to UCB's alleged actions.

### b.  There is an adequate monetary remedy.

Banc Card also cannot demonstrate irreparable harm because the damages suffered by Banc Card, if any, could be compensated adequately with money damages after a final resolution of the case.  *See Thompson*, 748 F. Supp. 2d at 832 (Varlan, J.) ("[A] harm is not irreparable 'if it is fully compensable by money damages . . . .'" (quoting *Overstreet*, 305 F.3d at 578)).  Irreparable harm can be present in some noncompetition cases, but only in certain situations, supported by sufficient evidence that the harm cannot be compensated adequately by monetary remedies.  For example, disclosure of confidential information may constitute irreparable harm where that information would be "'extremely useful to competitors.'"  *PartyLite Gifts*, 2006 WL 2370338, at *8 (Varlan, J.).  The only "confidential information" Banc Card alleges UCB to have disclosed, however, is publicly available on the Internet, *see* Griffis Decl., at ¶¶ 3-12; thus, even if UCB had disclosed such information, it would not be "extremely useful to competitors," as it is already readily available to competitors.  Banc Card has not presented sufficient evidence here.

Banc Card has not shown that its damages could not, for example, be calculated based on revenues lost or other appropriate accounting methods, supported by evidence, if Banc Card

prevailed on its claims.[16]  Where harm can be compensated for adequately with money damages, as is the case here, injunctive relief is inappropriate.  *See Dellwood Foods*, 420 F. Supp. at 427 ("Furthermore, the damages suffered by Dellwood, if any, would be capable of adequate money damages after a final resolution.").

Therefore, Banc Card has not demonstrated that it will suffer irreparable harm if a preliminary injunction is not entered.

### C.  Banc Card Has Not Demonstrated That Preliminary Injunctive Relief Would Not Cause Substantial Harm to Others.

This factor requires the Court to "'balance the harm [Banc Card] would suffer if its request for a preliminary injunction was denied with the harm [UCB] would suffer if [it] were to be preliminarily enjoined."  *PartyLite Gifts*, 2006 WL 2370338, at *9 (quoting *Corp. Exp. Office Prods. v. Warren*, Nos. 01-2521 DBRE, 01-2667 DBRE, 2002 WL 1901902, at *27 (W.D. Tenn. May 24, 2002)).  It also requires the Court to "'assess the impact a preliminary injunction might have on relevant third parties.'"  *Id.* (denying motion for preliminary injunction).

In examining this factor, it is clear that issuing a preliminary injunction would interfere with the rights of Banc Card's existing customers (business entities) to choose where to take their business.  Banc Card seeks to "ensur[e] that competition is both vigorous and fair," *see* TRO Br., at 17, but the requested injunctive relief would *impede and stifle* competition.  What Banc Card really desires is to restrict its customers from taking their business elsewhere.  This Court rejected such a consequence in *PartyLite*, where the Court found that the "greater harm"

---

[16] In fact, Banc Card has failed to offer any explanation of the irreparable harm it claims it will suffer; all it has offered are conclusory allegations, such as "Banc Card will suffer irreparable harm as a result of this breach [of contract]."  Compl., at ¶ 30; *see also id.* at ¶ 36 (stating only, "As a proximate result of United Bank's tortious conduct, Banc Card will be irreparably harmed.").

was the "restraint on competition for the services," and thus "the greater harm would result from the imposition of a preliminary injunction."  2006 WL 2370338, at *9.

Similarly, the issuance of an injunction would interfere with UCB's rights to compete in the market.  In *Thompson*, this Court denied the plaintiffs' motion for temporary restraining order where, among other things, issuing such order would impinge upon the defendant's rights. 748 F. Supp. 2d at 832.  This factor weighs against issuing an injunction.

### D. Banc Card Has Not Demonstrated That Preliminary Injunctive Relief is in the Public Interest.

As with the third factor, the fourth factor (public interest) militates against issuing a preliminary injunction.  A preliminary injunction here would actually *harm* the public by restricting free competition and impeding the rights and abilities of merchants and other businesses to choose where to take their business.  As in Tennessee, as this Court has noted,[17] restraints of trade are disfavored in Georgia.  *See, e.g., Riddle*, 254 Ga. App. at 120, 561 S.E.2d at 458 ("A contract in general restraint of trade or which tends to lessen competition is against public policy and is void." (internal quotation marks omitted)); *Alice v. Robett Mfg. Co.*, 328 F. Supp. 1377, 1380 (N.D. Ga. 1970) ("[I]n Georgia, where covenants thus in restraint of trade are given effect, it is said that they are not favored, and the courts uphold them only if narrowly drawn."); *Windsor-Douglass Assocs., Inc. v. Patterson*, 179 Ga. App. 674, 674, 347 S.E.2d 362, 363 (1986) ("'A covenant not to compete, being in partial restraint of trade, is not favored in the law, and will be upheld only when strictly limited . . . .'")[18]; *Bonner v. Bailey*, 152 Ga. 629, 110 S.E. 875, 877 (1922) ("[I]t is settled in this state that a contract in general restraint of trade without territorial limitation is contrary to public policy and unenforceable.").

---

[17] *See PartyLite*, 2006 WL 2370338, at *9.

[18] As discussed *supra*, the covenant not to compete in the 2011 Agreement is unreasonable under Georgia law.  *See supra* Part III.A.1.

Thus, as in *PartyLite*, issuing a preliminary injunction in this case "would act as a restraint of trade" and thus "the public interest does not favor the requested relief." 2006 WL 2370338, at *9.

## IV.   CONCLUSION

For the reasons explained above, Banc Card has not shown, and cannot show, that any of the four factors weigh in its favor. Therefore, Banc Card's request for preliminary injunctive relief must be denied.

Dated: July 14, 2014.

Respectfully submitted,

/s/ Taylor A. Williams
Dwight E. Tarwater (BPR #007244)
Taylor A. Williams (BPR #028172)
PAINE, TARWATER, AND BICKERS, LLP
900 South Gay Street, Suite 2200
Knoxville, TN 37902-1821
T: (865) 525-0880
F: (865) 521-7441
det@painetar.com
taw@painetar.com

and

Stephen E. Hudson (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
T: (404) 815-6356
F: (404) 541-3248
shudson@kilpatricktownsend.com

*Co-Counsel for Defendant United Community Bank*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 14, 2014, a copy of the foregoing ***Defendant's Brief in***

***Opposition to Plaintiff's Motion for Preliminary Injunction*** was filed electronically.  Notice of

this filing will be sent by operation of the Court's electronic filing system to all parties indicated

on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may

access this filing through the Court's electronic filing system.


/s/ Taylor A. Williams
Taylor A. Williams (BPR #028172)
