UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BANC CARD GEORGIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-300-TAV-HBG |
| | ) | |
| UNITED COMMUNITY BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the Chief District Judge, [Doc. 19].

Now before the Court is Plaintiff's Motion to Order Defendant to Show Cause Why It Should Not be Held in Contempt [Doc. 14]. This motion is ripe for adjudication, and for the reasons stated herein, it will be **DENIED**.

**I. BACKGROUND**

Plaintiff Banc Card Georgia LLC ("Banc Card") and Defendant United Community Bank ("UCB") entered into a series of agreements, whereby UCB agreed that it would refer the names of certain of its banking customers to Banc Card. Banc Card could then offer those customers credit, debit, and ATM card processing and settlement services. If the referred customers elected to use Banc Card for their card processing services, Banc Card would pay a referral fee to UCB. The parties' contractual relationship, which began in 2003, came to an end on June 1, 2014.[1]

---

[1] A more thorough review of the parties' relationship and its history is included in the Memorandum Opinion and Order of the Chief District Judge entered July 24, 2014, [Doc. 18].

For purposes of the issue before the undersigned, there is no dispute that: (1) on and between July 11, 2014, and July 18, 2014, a temporary restraining order ("TRO") was in effect in this case; and (2) in relevant part, the TRO provided that UCB was prohibited from "initiating further contact with any of those customers acquired by Banc Card pursuant to the agreement between the parties."

## II. POSITIONS OF THE PARTIES

Banc Card moves the Court to enter an Order directing UCB to show cause as to why it should not be held in contempt of Court for violation of the TRO. Banc Card argues that UCB violated the TRO by directly contacting a customer that Banc Card had acquired pursuant to the parties' agreement. Specifically, Banc Card alleges that, on July 11 and July 18, 2014, Shannon Cathey, who identified herself as an employee of UCB, contacted a representative of Horton's Books and Gifts ("Horton's") for purposes of soliciting Horton's business for UCB. Banc Card maintains that Ms. Cathey: contacted a representative of Horton's on July 11, 2014; followed up with an email to the representative of Horton's that night, which included a merchant account proposal; and followed up via email again on July 18, 2014, which again included a merchant account proposal. Banc Card has submitted sworn testimony in support of its position through the Affidavit of Tyler Cook [Doc. 16] and the Affidavit of Charles H. Geny [Doc. 15].

UCB responds that the TRO does not prohibit UCB from "directly contacting" customers, as is implied by Banc Card. Instead, it prohibits UCB from "initiating further contact" with such customers, and UCB denies that it initiated any contact with Horton's or its employees. UCB alleges that Dorothy Pittman, the owner of Horton's came into the UCB branch location in Carrollton, Georgia, and requested that Gina Steed have someone from UCB

contact Ms. Pittman to provide her with information regarding UCB's new payment services. USB maintains that, consistent with this request, Ms. Cathey contacted Ms. Pittman via telephone on July 10, 2014, at which time Ms. Pittman said she was busy. Therefore, Ms. Cathey contacted Ms. Pittman on July 11, 2014. UCB contends that, during that call, Ms. Pittman requested that Ms. Cathey send her pricing information, and Ms. Cathey emailed her the same shortly thereafter. UCB states that Ms. Cathey contacted Ms. Pittman on July 18, 2014, to inquire as to whether she had received the pricing information, and when Ms. Pittman said she had not, Ms. Cathey re-emailed the information. UCB argues that Ms. Cathey did not initiate contact with Ms. Pittman or Horton's and that her actions did not violate the TRO. UCB has submitted sworn testimony in support of its position through the Declaration of Gina Steed [Doc. 17-1] and the Declaration of Shannon Cathey [Doc. 17-2].

Banc Card did not file a reply in support of its position, and the time for doing so has expired, see E.D. Tenn. L.R. 7.1.

**III.    ANALYSIS**

"A litigant may be held in contempt if his adversary shows by clear and convincing evidence that 'he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" American Girl, Inc. v. Hammer, 2014 WL 3507339, at *4 (Varlan, C.J.) (E.D. Tenn. July 14, 2014) (quoting NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir. 1987)).

Technically, Banc Card has moved the Court to issue a show cause order, rather than directly holding UCB in contempt. However, the ultimate issue before the Court is whether there is a basis for finding that Banc Card has shown, by clear and convincing evidence, that

3

UCB violated "a definite and specific" order of the Court. See id. The undersigned concludes that there is no basis for so finding, and accordingly, the Motion to Order Defendant to Show Casue [Doc. 19] will be **DENIED**.

There is no dispute that the TRO prohibited UCB from "initiating further contact with any of those customers acquired by Banc Card pursuant to the agreement between the parties." In response to Banc Card's motion, UCB brought forth sworn testimony that it did not initiate contact with Horton's, Ms. Pittman, or any other representative of Horton's. To the contrary, Ms. Steed stated that Ms. Pittman came into the local UCB branch and requested that someone from UCB contact her regarding merchant payment services. [Doc. 17-1 at ¶¶ 2, 9]. Similarly, Ms. Cathey stated that she was advised that Ms. Pittman had requested that someone from UCB's payment services provider contact her to discuss its services. [Doc. 17-2 at ¶ 1].

Banc Card has not offered any sworn testimony to controvert the sworn statements of Ms. Steed and Ms. Cathey. The sworn testimony provided by Banc Card is vague and simply states that Tyler Cook, an employee of Banc Card, received, from a representative of Horton's on July 19, 2014, an email and attached proposal originally provided by UCB to Horton's. Banc Card does not submit any testimony that would support a finding that UCB initiated the contact with Horton's or any testimony that would otherwise undercut UCB's version of events.

The evidence before the Court does not support a finding that UCB "violated a definite and specific" order of the Court. The TRO issued by the Court specifically prohibited UCB from *initiating* contact with Banc Share's customers. The TRO did not prohibit UCB from having any contact with Banc Share's customers or from responding to inquiries by Banc Share's customers. The sworn testimony before the Court cannot support a finding that UCB *initiated* contact with Ms. Pittman, and to the contrary, the evidence indicates that UCB merely responded to contact

initiated by Ms. Pittman. Accordingly, the Court finds that Banc Card has failed to demonstrate by clear and convincing evidence that UCB violated the specific terms of the TRO, and therefore, the undersigned concludes that it would not be appropriate for the Court to issue the requested show cause order.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that the Motion to Order Defendant to Show Cause Why It Should Not Be Held in Contempt **[Doc. 14]** is not well-taken, and it is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge

5

Case 3:14-cv-00300-TAV-HBG   Document 24   Filed 08/13/14   Page 5 of 5   PageID #: 531